The lawfulness or reasonableness of the decision of the Board of Tax Appeals depends upon whether the machinery and equipment in question, or any of it, constitutes an improvement on land within the contemplation of Section 2 of Article XII of the Constitution and Section 5388, General Code (115 Ohio Laws, 564). There is no question as to the values placed upon the property assessed, the only question being its proper classification as personal property or land and improvements thereon. The plant is comparatively new, *Page 534 
the property here in question having been placed upon the tax list and duplicate for the first time for the tax year 1938. The taxpayer returned all of the items in dispute as personal property and paid taxes accordingly. Appellants, however, insist that such items constitute real property under the law of fixtures and that taxes should be paid at the land and improvement rate. Their position is based largely upon the following propositions:
(1) For many years the law has been administered in Cuyahoga county according to the position now taken. The auditor is not changing the administration of the tax law as to such machinery and fixtures which have consistently been taxed as real estate. (2) That in determining whether each machine or piece of equipment has become an improvement to the land, the auditor may consider the use to which the owner has devoted the land and may regard in this instance all of the machinery and equipment as an integrated steel plant and therefore an improvement to the land.
If the property in question was to have been taxed as real estate it would have been upon a value fixed sexennially and at a higher rate than as personal property. If such property should have been taxed as personal property, the depreciated annual value would have been the base and the rate would have been (and still is) lower than the real property rate. (Under Section 5548, General Code, 120 Ohio Laws, 466, as effective September 16, 1943, the county auditor may now adjust any real estate value from time to time.)
While professing to follow the criterion of a fixture as announced in Teaff v. Hewitt, 1 Ohio St. 511, 530, 59 Am.Dec., 634, appellants go further and assert that where one has integrated a manufacturing plant on his own land, it follows that he intended to make such plant a part of the realty. This notwithstanding the rule *Page 535 
laid down in Teaff v. Hewitt that the intention to make a permanent accession to the realty must affirmatively and plainly appear.
If the property be improvements on land owned by themanufacturer, similar property must be held to be improvements on land when erected on the land of another, otherwise we would be confronted with a purposeful discrimination contrary to the federal Constitution.
Under appellants' contention paragraph (1) of Section 5388, General Code, would have a varying application, dependent upon whether the machinery was on land owned by the manufacturer or on leased land. If such machinery were held to be improvements on land, irrespective of ownership, it would require the application of the uniform rule and would defeat the purpose of paragraph (1) of Section 5388, General Code. Furthermore, every time a machine was abandoned, the manufacturer who was a lessee would have to get permission for its removal from the landlord or attempt to secure advance permission in the lease. The evidence discloses that there are firms engaged in buying and selling second hand plant machinery and equipment such as involved in this case. The evidence also discloses that some of the machines here involved have been removed from the plant since tax lien date 1938. We take judicial notice of the fact, which is likewise disclosed by the evidence, that manufacturing machinery and equipment depreciate and wear out or become obsolete within a short time, requiring replacement by the same kind or by a new development in the art or industry. While the court is not to be concerned with the result of constitutional legislation, such reflection may be helpful in determining the purpose of the constitutional amendment and succeeding legislation.
Effective January 1, 1931, an amendment of Section *Page 536 
2, Article XII of the Constitution was adopted, authorizing the General Assembly to "determine the subjects and methods of taxation or exemptions therefrom." (Applicable to personal property.)
Pursuant to such authority the General Assembly enacted a general revision of our tax laws (Amended Senate Bill No. 323,114 Ohio Laws, 714, later amended by Amended Senate Bill No. 30, 115 Ohio Laws, 548, and Section 5388, General Code, again amended, effective September 6, 1939, by House Bill No. 135, 118 Ohio Laws, 609). As the questions in this case arise under an assessment for the year 1938, Section 5388, General Code, as amended 115 Ohio Laws, 564, is applicable.
Borrowing the language of Judge Williams in the case ofStandard Oil Co. v. Zangerle, Aud., 141 Ohio St. 505, 509,49 N.E.2d 406:
"Before the year 1932 the machinery and equipment involved here and in existence then was taxed as part of the real estate without question being raised. Previously, Section 2 of Article XII of the Constitution required all property, real and personal, to be taxed by uniform rule according to its true value in money, and for years the refining machinery and equipment which are the subject of dispute here were taxed as a part of the real estate without complaint on the part of the taxpayer, for the simple reason that so far as the amount of taxes payable was concerned there would be no difference whether such property was taxed as realty or personalty. Thereafter, Section 2, Article XII, was changed (effective January 1, 1931) so as still to require land and improvements thereon to be taxed by uniform rule according to their true value in money but to permit personal property to be classified and subjected to varying prescribed rates of taxation." *Page 537 
In the case of Schumacher Stone Co. v. Tax Commission,134 Ohio St. 529, 18 N.E.2d 405, 120 A. L. R., 1199, Judge Myers said at page 531:
"Counsel for the Tax Commission place considerable stress on the fact that prior to the enactment, in 1931, of the law providing for classification of personal property, the company had never made a tax return as a manufacturer although it had been in the same business for many years. This fact is not controlling for the reason that prior to the enactment of that law, it made no particular difference as to classification of the personal property here in question. Moreover, if a mistake had been previously made in making a return, appellee should not be prevented now from having the personal property taxed according to its true status."
We may, therefore, dispose of the aforesaid first ground with the observation that if the amendment to Section 2 of Article XII of the Constitution and the legislation thereafter enacted require a departure from the procedure theretofore obtaining, the auditor will no longer be justified in following the former practice.
We find no justification in the law of this state for holding that where an owner constructs a manufacturing plant upon his land the integrated plant is to be considered as an improvement to the land. (Brennan v. Whitaker, 15 Ohio St. 446, claimed to be such authority, will be discussed later.) Were such a purposeful discrimination made between the machinery of an owner of the land and that of a lessor of land it would be violative of the Fourteenth Amendment to the Constitution of the United States.
Appellants have cited cases from other jurisdictions which we shall not consider here for the reason we believe that the law of fixtures is well settled in this state and that the rules laid down in previous cases are sufficient to dispose of our questions here. Indeed, both *Page 538 
sides place their principal reliance on the criterion of a fixture announced in Teaff v. Hewitt, supra. The case of Teaff
v. Hewitt, supra, is usually cited wherever the subject of fixtures is discussed. It has been followed by courts and text writers generally. The criterion of a fixture there laid down has never been departed from by this court.
We must assume that the General Assembly acted in reliance upon the law of fixtures as declared by this court inTeaff v. Hewitt, supra.
While the terms "real property" and "land" are defined in Section 5322, General Code, to include not only land itself but also, unless otherwise specified all buildings, structures, improvements, and fixtures, of whatever kind thereon; in Section 5388, General Code, it is otherwise specified as to all engines, machinery, tools and implements of a manufacturer except such as may have been legally regarded as improvementson land and considered in arriving at the value of real property assessed for taxation. It is also "otherwise specified" in Section 5386, General Code, which requires a manufacturer to list the items in question. This is a provision applicable only to personal property. Our question here is therefore limited to what constitutes an improvement on land rather than what is a fixture "of whatever kind."
Section 5386, General Code, provides in part: "* * * A manufacturer shall also list all engines and machinery of every description used, or designed to be used, in refining or manufacturing, and all tools and implements of every kind used, or designed to be used, for such purpose, owned or used by such manufacturer."
Section 5387, General Code (115 Ohio Laws, 563), provided:
"All personal property used in business and belonging to a manufacturer excepting that required to be *Page 539 
listed on the average basis by Section 5385 of the General Code, and that specifically mentioned in Section 5386 of the General Code, shall be listed separately from the property of such manufacturer, mentioned in said sections."
Section 5388, General Code (115 Ohio Laws, 564), provided in part:
"* * * Personal property of the following kinds, used in business, shall be listed and assessed at fifty per centum of the true value thereof, in money, on the day as of which it is required to be listed, or on the days or at the times as of which it is required to be estimated on the average basis, as the case may be:
"(1) All engines, machinery, tools and implements of a manufacturer mentioned in Section 5386 of the General Code, and all engines and machinery of every description used, or designed to be used in mining, and all tools and implements of every kind used, or designed to be used for such purpose, excepting as provided in the last paragraph of this section, and all engines, machinery, tools, implements and domestic animals used in agriculture, and all machinery, implements and tools used in laundries and dry cleaning plants, except as any of the kinds of property mentioned in this paragraph may have been legally regarded as improvements on land and considered in arriving at the value of real property assessed for taxation. * * *"
As tending to show legislative intent we call attention to the action of the General Assembly following the decision in the case of Schumacher Stone Co. v. Tax Commission, supra, wherein it was held:
"Machinery, used in crushing and screening limestone into various merchantable sizes without the application of any art or process to change the form or appearance of the broken pieces of stone, each grade *Page 540 
being designated according to size and use, mostly for road construction but also for other minor purposes, is not, and should not be assessed as, personal property used in manufacturing, within Sections 5385, 5386 and 5388, General Code." The foregoing case was decided December 28, 1938.
On June 1, 1939, effective September 6, 1939, the General Assembly so amended paragraph (1) of Section 5388, General Code, as to read as follows (the amended part will appear in italics):
"All engines, machinery, tools and implements of a manufacturer mentioned in Section 5386 of the General Code, and all engines and machinery of every description used, or designed to be used in mining, and all tools and implements of every kind used, or designed to be used for such purpose, excepting as provided in the last paragraph of this section,and all engines, machinery, tools and implements used in stoneplants and gravel plants, and all engines, machinery, tools, implements and domestic animals used in agriculture, and all machinery, implements and tools used in laundries, towel andlinen supply and dry cleaning plants, except as any of the kinds of property mentioned in this paragraph may have been legally regarded as improvements on land and considered in arriving at the value of real property assessed for taxation." (Italics ours.)
The General Assembly, of course, has no power to, and specifically did not attempt to, make any classification of property which was in law "an improvement on land.
It is to be noted that the General Assembly in the enactment of Section 5388, General Code, excepted only the kinds of property which "may have been legally regarded as improvements on land." We do not consider that the term "improvements on land" necessarily embraces everything attached to the realty or *Page 541 
"fixtures of whatever kind." In other words, to become a true fixture whatever is attached to the realty must meet each and all of the three tests announced in Teaff v. Hewitt, supra.
Because of the rather wide use of the term "fixture" it will serve no purpose now to inquire into its etymology. We have many kinds of fixtures. In the recent case of United States ofAmerica v. General Motors Corporation, decided January 8, 1945, Mr. Justice Roberts referred to the expense of moving "removable fixtures and personal property from the premises. * * *"
Webster's New International Dictionary (2 Ed.), epitomizes the definition of "fixture" as follows:
"5. Law. a. Anything of an accessory character annexed to houses and lands, so as to legally constitute a part thereof; — Often called an immovable fixture. The law on the subject of fixtures varies with different subjects and in different jurisdictions. In general, however, a chattel will become a fixture if it is annexed in a manner relatively permanent and is of such a nature as to be suitable for use as part of the land to which it is annexed. Things fixed to the freehold for purposes of trade or manufacture (called trade fixtures) may in general be taken away when their removal is not contrary to a prevailing practice. In general the rule as between landlord and tenant favors the tenant, as between grantor and grantee and mortgagor and mortgagee it favors the grantee and mortgagee in doubtful cases, and as between heir and executor removal will not be permitted where it will injure the freehold. b.
Less commonly, a personal chattel annexed to lands or tenements but removable by the person annexing them, or his personal representative, without the consent of the owner of the real estate; — often called a movable fixture." *Page 542 
At page 523 of Teaff v. Hewitt, supra, Judge Bartley said:
"According to the decisions, an article may be a fixture constituting a part of the realty as between vendor and vendee, which would not, under like circumstances, be such, as between landlord and tenant; so also, an article may be such fixture as between heir and executor, which, under like circumstances of annexation, would not be such as between tenant for life, and the remainderman or reversioner. And also according to the decisions, an article affixed to the premises for purposes merely agricultural, may pass by a conveyance of the freehold as a fixture, which would not be such fixture under like annexation, if erected or affixed for the purposes of trade or manufacture; and an article attached to the realty may be removable at one period of time as a chattel, which with the same annexation at another period would not be removable, because it constituted a part of the realty. In some cases it has been determined, that in order to constitute a fixture, the article should be so united by physical annexation to the land or to some substance previously belonging thereto, that it cannot be detached without injury to the property; while in other cases, articles have been determined to be fixtures, and as such to pass by a conveyance of the freehold, with but a slight attachment to the realty, and in some instances, without any actual but by simply a constructive attachment.
"The term fixture itself, although always applied to articles of the nature of personal property which have been affixed to land, has been used with different significations, until it has become a term of ambiguous meaning. And this ambiguity which has attended the use of this word in various adjudications, and by different writers, has been productive of much of the uncertainty, *Page 543 
which has perplexed investigations falling under this branch of the law."
Before proceeding further we call attention to the fact that there is a distinction in theory and law between agricultural fixtures or improvements on agricultural land, and manufacturing fixtures or things which have become a part of a manufacturing plant. As phrased by Judge Bartley at page 535 inTeaff v. Hewitt, supra:
"The business of manufacturing, it has been said, is a pursuit personal in its character and not strictly subservient to real estate, or essential to the enjoyment of the freehold, or inheritance in land. Upon this ground arose the distinction for a time recognized by the courts between articles for agricultural purposes, or those erected for the purpose of trade or manufacture.
As defined by Webster, supra, and supported by the Ohio cases, to become a true fixture the thing annexed must be of an "accessory character." Webster defines "accessory" (noun) as "1. A thing that contributes subordinately to the effecting of a purpose or to an artistic effect; an adjunct or accompaniment. 2. Any article or device that adds to the convenience or effectiveness of something else but is not essential, as a speedometer on an automotive vehicle." As an adjective: "Of things, accompanying as a subordinate; aiding or contributing in a secondary way; connected as an incident or subordinate to a principal; additional."
That this accessory feature was fundamental with Judge Bartley is shown at page 527 of his opinion in Teaff v. Hewitt,supra, when he said:
"A fixture is in article which was a chattel, but which by being physically annexed or affixed to the *Page 544 
realty, became accessory to it and part and parcel of it." (Italics ours.)
Merely attaching a chattel to the realty does not necessarily convert it into a fixture in the strict sense of that term. The distinction which we here make is illustrated in Teaff v.Hewitt, supra, where it was pointed out (page 542) that part of the plant equipment was realty and a part personalty.
This distinction is also illustrated by the language of Judge White in Wagner v. Cleveland Toledo Rd. Co., 22 Ohio St. 563,577, 10 Am. Rep., 770:
"An article annexed to lands may, for some purposes, and as between certain parties, be regarded as part of the realty, while, as respects other parties and objects, the same thing may be considered as retaining its character as personalty."
Judge White also wrote the opinions in two earlier cases. InFortman v. Goepper, 14 Ohio St. 558, Judge White used as one of the tests of fixtures (page 564), " 'whether they can be removed without serious damage to the freehold, or substantially destroying their own qualities and value,' " and at page 567 said: "The mode of annexation, alone, will not determine the character of the property annexed." Judge White also distinguished between the land and the business carried on, saying at page 567: "The general principle to be kept in view, underlying all questions of this kind, is the distinction between the business which is carried on in or upon the premises, and the premises, or locus in quo. The former is personal in its nature, and articles that are merely accessory to the business, and have been put on the premises for this purpose, and not as accessions to the real estate, retain the personal character of the principal to which they appropriately belong and are subservient. But articles which have been annexed to the premises as accessory to it, whatever *Page 545 
business may be carried on upon it, and not peculiarly for the benefit of a present business which may be of a temporary duration, become subservient to the realty and acquire and retain its legal character."
In Brennan v. Whitaker, supra, the court held:
"That as between the owner of the fee as mortgagor, and his mortgagee, in a real estate mortgage, such property [the machinery in a sawmill] is to be regarded as fixtures."
Here Judge White again said (page 452):
"The mode of annexation, alone, does not determine the character of the property annexed; but the appropriateness of the articles named to the mill, and their necessity to its completeness, are also to be looked to."
Counsel for appellants, after quoting the foregoing language of Judge White, say:
"Obviously this case cannot be reconciled with the view of the corporation that machinery usable in a specialized business is appurtenant to the business rather than the land however permanently annexed by the freehold owner."
Such statement loses sight of Judge White's purpose in the use of that language. He was dealing in that case with the rights of a mortgagee under a mortgage from an owner of the land and mill. Judge White, by language in the whole opinion, showed that he was determining what the security was that was to be covered by the mortgage — the intention of the parties, the equities of that case. What was hold in that case was hedged about so as to limit the decision to the particular facts. When the language of Judge White in the preceding case of Fortman v. Goepper, supra, and in the succeeding case ofWagner v. Cleveland Toledo Rd. Co., supra, is read it must be apparent that the language relied upon by appellants cannot be construed to give countenance to the theory that a manufacturing *Page 546 
business becomes accessory to the land where no rights of lienholders or innocent third parties who have parted with value, are concerned. Besides, there was no such pronouncement in the syllabus.
Take our latest case, that of Holland Furnace Co. v. TrumbullSavings Loan Co., 135 Ohio St. 48, 19 N.E.2d 273, decided in 1939. In that case this court in substance found a furnace to be accessory to the real property, while in the case of Fortman v. Goepper, supra, the kettle in question was accessory to the business being conducted on the premises, i.e., as "an implement in the business." Likewise, in the case ofWagner v. Cleveland Toledo Rd. Co., supra, and Case Mfg. Co.
v. Garven, 45 Ohio St. 289, 13 N.E. 493, the articles which had been attached to the realty were accessory to the business rather than to the land.
In the Holland Furnace Co. case, Judge Hart closed his opinion with the following sentence: "This decision is confined to the facts in this case, which involves the rights of a subsequent purchaser for value, without notice."
In the Case Mfg. Co. case, supra, Judge Minshall, after noting the distinction made in the cases between (1) that which supplies the motive power, and (2) that which is propelled by it, said at page 300:
"Hence, it has generally been held in this country that articles of machinery used in a factory for manufacturing purposes, only attached to the building to keep them steady in their places, so that they may be more serviceable when in use, and that may be removed without any essential injury to the freehold or the articles themselves, are personal property and do not pass by a conveyance or mortgage of the freehold. See, also, Teaff v. Hewitt, supra, page 522.
In the finding and order of the board of revision in the instant case it is said: *Page 547 
"The mill, being a 'continuous strip mill' necessitates the positive and most accurate and exact location within a fraction of an inch of each machine with respect to its driving units, with reference to the preceding and succeeding machines in the production line, so as to become one smooth operating, integrated, apparently automatic, unit, said to be the largest and fastest mill of its kind in the world. * * * All of the equipment in the plant was designed and installed solely to produce the types of products which come from the plant. The location of the many pieces of equipment in the plant are very directly related one to the other, this relationship having been established to produce both quantity and quality of product at a minimum cost and a maximum speed."
In the instant case we have no question of motive power as the record discloses that the motive power is furnished by the local electric power company.
Evidence was offered on behalf, of the corporation that each and every item of property in question could be removed without the destruction of any property whatsoever.
As the case of Teaff v. Hewitt, supra, was decided prior to our syllabus rule we employ the language of the writer of the opinion. Beginning near the bottom of page 529, Judge Bartley announced three cumulative tests which were held to be essential to constitute the criterion which would determine whether a thing became a fixture in the true sense, to wit:
"From the examination which I have been enabled to give to this subject, and after a careful review of the authorities, I have reached the conclusion that the united application of the following requisites will be found the safest criterion of a fixture: (Italics ours.)
"1st. Actual annexation to the realty, or something appurtenant thereto. *Page 548 
"2d. Appropriation to the use or purpose of that part of the realty with which it is connected.
"3d. The intention of the party making the annexation, to make the article a permanent accession of the freehold — this intention being inferred from the nature of the article affixed, the relation and situation of the party making the annexation, the structure and mode of annexation, and the purpose or use for which the annexation has been made." (The italics or emphasis in test 3 are those of Judge Bartley.)
Judge Bartley then proceeded to say:
"This criterion furnishes a test of general and uniform application; one by which the essential qualities of a fixture can, in most instances, be certainly and easily ascertained, and tends to harmonize the apparrent conflict in the authorities relating to the subject. It may be found inconsistent with the reasoning and distinctions in many of the cases; but it is believed to be at variance with the conclusion in but few of the well considered adjudications.
"Adopting this as the criterion, there will be found no occasion for giving an ambiguous meaning to the term fixture; no occasion for denominating an article a fixture at one period of time, which with the same annexation would not be such at another period; no occasion for determining that to be a fixture as between vendor and vendee which under like circumstances would not be such as between landlord and tenant; or finding that to be a fixture as between heir and executor which under like circumstances of annexation would not be such as between tenant for life and remainderman or reversioner.Sturges v. Warren, 11 Vt. Rep., 433. It is true the time of the annexation and the relation and situation of the parties, may constitute very important considerations in ascertaining the intention and object of making the annexation."
We adopt Judge Bartley's criterion and hold that to *Page 549 
constitute a fixture as an improvement to land each of the three requisites laid down by Judge Bartley must be present.
With this introduction we proceed to an examination of the record in this case.
On tax-listing day 1938, amended regulation No. 34 adopted by the Tax Commission of Ohio on July 29, 1935, was in effect (See Section 5624, General Code). This regulation prescribed the classification of the tangible property of iron and steel plants and contained the following provision:
"The commission, considering the adjustment of the real estate duplicate in the various counties pursuant to this finding, directs the auditors of the said various counties in the state to remove from the real estate duplicates in the said various counties, as of the day preceding the second Monday of April, 1936, any of the items hereinbelow classified as personal property and add to the said real estate duplicates as of said date any items of property hereinbelow classified as real property not appearing thereon. Such adjustments should be made so that all the property hereinbelow classified as real property is listed and assessed on the said real estate duplicates, as of the said day preceding the second Monday of April, 1936, and so that all of the property hereinbelow classified as personal property is listed and assessed as personal property, as of January 1, 1936, or other listing day authorized by law for the return of personal property in the year 1936."
There followed in this regulation the classifications of the property of iron and steel plants under thirteen separate heads. These thirteen heads were in turn divided into items. The regulation is too voluminous for reproduction here. However, we have examined all of the classifications and do not find that any of the items complained of by appellants have been classified by *Page 550 
the Board of Tax Appeals otherwise than in accordance with such regulation. As applied in the instant case we find the regulation to be reasonable and lawful.
Section 5624, General Code, authorizing the Tax Commission to prescribe rules and regulations and to issue orders and instructions not inconsistent with law provided: "It shall cause the rules and regulations prescribed by it to be observed, the orders and instructions issued by it to be obeyed and the forms prescribed by it to be observed and used."
In Group III there are a number of weighing apparatus or scales. Some of these scales resemble truck scales and if they were located where they could be used as truck scales, might be so classified, but their respective locations are special and are determined by the plant layout in order to weigh materials as they move in the processing line.
Without at this time attempting to pass on whether truck scales are always fixtures, we are of the opinion that the eleven scales contained in Group III are not fixtures.
It is the contention of the corporation that:
"None of the property in dispute is in any way attached to any of the buildings or building foundations. Some of it is fastened down for the sole purpose of holding it in place as against the vibration and shock incident to its operation and use, by bolts, with removable nuts, to equipment foundation blocks, piers, walls or beams, or to the concrete floor, or to other pieces of equipment. All of such property so bolted down is, by intent and design, movable and removable wholly without damage to it or to any other property whatsoever." We think that this is a fair summary of the evidence.
In appellants' brief it is said:
"The evidential facts are not in dispute and consist in the main of data prepared, assembled, and agreed *Page 551 
upon by representatives of the company and the assessing authority of the county * * *."
In the statement of appellants' expert it is said:
"Location of all machines and equipment in the 21 acres of building is worked out for a continuous flow without back tracking. Making 'tailor made' products to meet particular specifications received special attention. The primary consideration in designing the mill was the location of the production lines to insure an efficient and economical flow of product. Each machine, of any particular production line, is interconnected with the preceding and succeeding unit and in only a few instances could be removed without interrupting the operation.
"Depending upon the weight and size of the machine to be supported, the foundations on which they [sic] rest were predesigned. Principally they are reinforced concrete blocks, piers or bearing walls of varying mass, size and elevations. The foundation blocks, piers and walls for the heavy equipment are built upon foundation mats which are supported by piling, other lighter equipment is supported on the mill floor. In the majority of cases bolts extend [sic] into the foundations secured the machines."
This, too, is a brief but fair picture of what appellants contend is an integrated plant which has become a part of the realty.
However, the board of revision, consisting of the auditor, treasurer and president of the Board of County Commissioners of Cuyahoga county, stated in the course of the finding and order after saying that "numerous authorities might be cited to show that it is immaterial that machines may be removed and used elsewhere, and that they may be removed without injury to the property":
"It is our opinion that these machines cannot be removed without injury to the soil unless the foundations *Page 552 
are also removed. It is obvious that removal of the machines would still leave the massive foundations in place and a labyrinth of concrete foundations precludes the use of such property for all ordinary manufacturing purposes. The ordinary manufacturing plant employing heavy machinery, requiring special foundations, could not excavate and construct appropriate foundations to suit its purpose and needs without entailing prohibitive costs in removing the present steel and concrete foundations. Indeed, the removal of machinery by the Republic Steel Corporation itself would render the property useless to a company even for the installing of another strip mill in that the present foundations are not designed for the load and duties and functions of any continuous strip mill except the present one. Every strip mill is differently designed as to kind of machinery, continuity of process, location of units, etc. In this connection, we recall the testimony of Mr. Brooks to the effect that it would not be economic to remove the present foundation.
"Thus, it would seem apparent that the removal of the machinery or inability economically to remove the foundations would render the property less useful as a manufacturing plant. No doubt the present foundations would interfere with the necessary foundations and basement of even a commercial building. Thus, the land could be sold for only a limited use or inferior purpose, reducing greatly the obtainable price for comparable lands."
We are of the opinion that the foregoing excerpt from the finding and order of the board of revision does not justify a finding that the machinery in question was made accessory to the land — something which could readily be used by a succeeding tenant. Judge Bartley, at page 528, did refer to millstones and other articles held to be fixtures which could be removed without injury to the freehold, yet his language and conclusions *Page 553 
as a whole do not justify a conclusion that he was of the opinion that manufacturing machinery in general was other than personal to the business being carried on upon the land where such machinery was located and attached for convenience and better manufacturing results. At page 535 in Teaff v. Hewitt,supra, Judge Bartley said:
"The nature of the property itself, the customary removal of it from place to place, its liability to be taken away or disposed of, and other articles of the same kind supplied, to take its place, show that it was not intended to be made a permanent accession to the freehold, and therefore was not covered by the mortgage [on realty] of the complainant."
Appellants state the principal difference between the parties to be:
"The auditor contends —
"The property in controversy, being by the owner attached to the realty appropriated to the use to which the realty is devoted, and intended to be a permanent part of an integrated steel plant, is taxable as realty.
"The corporation contends —
"The property involved in this controversy is taxable as personalty since it is manufacturing machinery and equipment used solely in a particular, highly specialized manufacturing business, and would not be of benefit to the land if the particular industry were removed therefrom."
Except so far as the property in controversy has become an improvement to the land, the auditor's contention is without support in the law of this state.
Except so far as the property involved in this controversy has become an improvement to land the corporation's contention as stated by the auditor has the support of the law of this state as announced in Teaff v. Hewitt, supra, and has never since been questioned in any case decided by this court. *Page 554 
It would unduly burden this opinion and serve no useful purpose for us to discuss each of the separate items attacked by the appellants herein, except to make the following general observation in respect of mats or equipment foundations:
The record discloses that to prevent vibration and to keep the machinery in true alignment, it is fastened to the floor and in many instances concrete mats or foundations are placed under the heavy machines. Such mats or foundations are not building foundations and according to our understanding of the record in this case may not be considered as improvements to the land. Indeed, were the steel plant abandoned such mats would constitute encumbrances rather than improvements.
As stated by the Board of Tax Appeals in its decision, no material facts are disputed, many of them have been stipulated. Likewise, there is no controversy as to the valuations of the property assessed, consequently the only question before the board (and now before this court) is whether the items classified by the board of revision as real estate constitute realty or personalty. The Board of Tax Appeals attempted to follow the criterion of a fixture as laid down by this court in the case of Teaff v. Hewitt, supra, the board stating in its decision:
"It is sometimes difficult to determine whether a certain item constitutes real or personal property. Some of the decisions of courts of other states on this question are somewhat confusing. In Ohio, however, the principles to be followed here have been clearly set forth by the Supreme Court, but the difficulty lies in application of those principles to the facts in a particular case. The requisites necessary to convert a chattel into a fixture, which were set forth in the case of Teaff v. Hewitt, 1 Ohio St. 511, have been consistently adhered *Page 555 
to by later decisions of the Supreme Court and by most decisions of lower courts of this state."
During oral argument appellants called attention to the loss of tax revenue if the property in question were held to be personalty. The corporation called attention to the handicap to the manufacturing industry of the state if the property in question were to be treated as realty. This court is concerned with neither of these arguments both of which should properly be addressed to the General Assembly in case the existing law is to be criticized. The record fails to disclose either that the several items of property constitute improvements on land or that they were annexed to the realty or something appurtenant thereto with the intention of making such items permanent accessions to the freehold. The nature of the articles affixed, the relation and situation of the party making the annexation, the mode of annexation, and the purpose and use for which the annexations were made, the tendency to quick exhaustion and obsolescence and the fact that removal, renewal, substitution or abandonment is a common practice in respect of such items of property, fail to show an intention to make such items of property improvements on land or accessory to the freehold.
As Judge Bartley said in Teaff v. Hewitt, supra (page 533):
"Inasmuch as it requires a positive act on the part of the person making the annexation to change the nature and legal qualities of a chattel into those of a fixture, the intention to make the article a permanent accession to the realty, must affirmatively and plainly appear; and if it be a matter left in doubt or uncertainty, the legal qualities of the article are not changed, and the article must be deemed a chattel."
In the cases of Wheeling Steel Corp. v. Evatt, Tax Commr.,143 Ohio St. 71, 54 N.E.2d 132, the Board *Page 556 
of Tax Appeals treated the machinery and factory equipment of that taxpayer's three separate plants as personal property and this court affirmed such decision. It is true that in those cases the question of whether such property was properly classified was not specifically raised but such question was implicit both in the decision of the board and in our affirmance. In that same case this court held in respect of the valuation there under consideration:
"The action of an administrative officer or board within the limits of the jurisdiction conferred by law is presumed, in the absence of proof to the contrary, to be valid and to have been done in good faith and in the exercise of sound judgment." See, also, State, ex rel. Maxwell, Pros. Atty., v. Schneider,103 Ohio St. 492, 498, 134 N.E. 443; 20 American Jurisprudence, 174, Section 170.
Therefore to hold the property in question to be taxable as improvements to land would be to legislate, a function which this court disclaims.
In a decision covering 37 printed pages, the Board of Tax Appeals considered the various disputed items and came to the conclusion that under the criterion announced in the case ofTeaff v. Hewitt, supra, none of the disputed items constituted an improvement on land. From our review of the record and giving due consideration to the arguments and briefs of the appellants, we are of the opinion that the decision of the Board of Tax Appeals in the instant case is neither unlawful nor unreasonable and should be and hereby is affirmed.
Decision affirmed.
BELL, MATTHIAS and HART, JJ., concur.
WEYGANDT, C.J., ZIMMERMAN and WILLIAMS, JJ., dissent. *Page 557