## SUN LIFE ASSURANCE COMPANY OF CANADA et al., Appellees,

### v.

## SCHROCK ROAD MARKETS, INC., Appellant.

[Cite as *Sun Life Assur. Co. of Canada v. Schrock Rd. Mkts., Inc.*, 174 Ohio App.3d 602, 2008-Ohio-7.]

Court of Appeals of Ohio,
Fifth District, Delaware County.

No. 06CAE110089.

Decided Jan. 2, 2008.

Dimitrois G. Hatzifotinos, for appellees.

Dennis L. Pergram, for appellant.

HOFFMAN, Presiding Judge.

{¶ 1} Defendant-appellant, Schrock Road Markets, appeals the October 27, 2006 judgment entry of the Delaware County Court of Common Pleas in favor of plaintiffs-appellees Sun Life Assurance Company of Canada and Grubb & Ellis/Adena Realty Advisors.

## STATEMENT OF THE FACTS AND CASE

{¶ 2} In November 1992, Windsor Bay Company and Big Bear Stores Company, a division of the Penn Traffic Company ("Big Bear"), entered into a lease for a parcel of land and a one-story building to be erected thereon containing approximately 57,712 square feet to be developed into Big Bear Store 212.

{¶ 3} Pursuant to the terms of the lease, the Windsor Bay Company was responsible for erecting the building and installing a parking area, sidewalk, and traffic-control signal. The lease provided that Big Bear was to install the rooftop unit and equipment and furnishings at its own expense.

{¶ 4} Article 2, Section 2.1.1 of the Project Manual refers to Big Bear as the "OWNER" and provides:

{¶ 5} "Add–Wherever 'Owner' appears in the pre-printed General Conditions, it shall be understood to mean 'Lessee,' i.e., Big Bear Stores Company."

{¶ 6} Article 12 of the lease states:

{¶ 7} "Any trade fixtures, equipment, or other property installed or attached to the Demised Premises by or at the expense of the lessee (including signs) shall remain the property of the lessee, and lessee shall have the right at any time, from time to time, to remove any and all such property. Any damage to the building or land comprising the Demised Premises caused by any such removal shall be promptly repaired by the lessee so that the Demised Premises will be left in good order and repair."

{¶ 8} Section 1.01(A) of the Project Manual provides as follows:

{¶ 9} "A. Install an Owner furnished package rooftop unit as shown on drawings and specified therein."

{¶ 10} Subsequent to the execution of the lease, Sun Life Assurance Company of Canada ("Sun Life") purchased Windsor Bay from the Windsor Bay Company. As part of the sale, Sun Life acquired the lease and became the "Lessor" of the property. Appellee Grubb & Ellis/Adena Realty Advisors managed the lease on behalf of Sun Life.

{¶ 11} In May 2003, Big Bear filed for Chapter 11 bankruptcy protection in the United States Bankruptcy Court of the Southern District of New York. However, Big Bear Store 212 continued to operate on the property for a number of months. On November 18, 2003, Big Bear filed a motion to liquidate its assets, including those located at Big Bear Store 212. On January 22, 2004, the Bankruptcy Court trustee rejected the lease.

{¶ 12} Pursuant to the operating agreement issued by the trustee on February 19, 2004, all the remaining fixtures, furnishings, and equipment owned by Big Bear were sold to Schrock Road Markets, Inc., by National Liquidators on behalf of the bankruptcy court. After lease negotiations failed between Sun Life and Schrock Road Markets, Inc., Schrock Road Markets removed the fixtures, furnishings, and equipment from the premises, with the exception of the heating, ventilating, and air-conditioning ("HVAC") rooftop unit and the automatic door openers/sensors at issue herein.

{¶ 13} Sun Life filed a complaint for declaratory judgment in the Delaware County Court of Common Pleas, and Schrock Road Markets filed a counterclaim for declaratory judgment, both parties claiming to be the owner of the rooftop unit and the openers/sensors located at Big Bear Store 212.

{¶ 14} The matter proceeded to a bench trial on September 5, 2006. By judgment entry of October 27, 2006, the trial court entered judgment in favor of appellees Sun Life Assurance Company of Canada and Grubb & Ellis/Adena Realty Advisors. Appellant, Schrock Road Markets, now appeals, assigning as error:

{¶ 15} "I. The trial court committed prejudicial error as a matter of law by ruling that the fixtures not removed by Big Bear after the termination of the lease became the property of the landlord Sun Life.

{¶ 16} "II. The trial court's finding that the rooftop unit and openers/sensors were fixtures is against the manifest weight of the evidence.

{¶ 17} "III. The trial court committed prejudicial error as a matter of law because there was not sufficient evidence for the trial court's determination that the rooftop unit and openers/sensors are fixtures."

I

{¶ 18} In the first assignment of error, appellant argues that the trial court erred in determining that the rooftop unit and openers/sensors became the property of Sun Life when the fixtures were not removed at the termination of the lease.

{¶ 19} Testimony at trial established that Big Bear filed for bankruptcy protection in May 2003. Richard Underman, part owner and executive vice president of Grubb and Ellis/Adena Realty Advisors, in charge of managing the lease at issue, testified:

{¶ 20} "Q. Mr. Underman how long have Grubb and Ellis been the managing agent for Sun Life?

{¶ 21} "A. We have been the management agent since the year 2000.

{¶ 22} "Q. And at the time you took over management duties was the premises occupied the premises with the Big Bear Store occupied by a tenant?

{¶ 23} "A. Yes it was.

{¶ 24} "Q. Who was the tenant?

{¶ 25} "A. That tenant was Big Bear.

{¶ 26} "Q. Do you recall how long Big Bear was a tenant at that property?

{¶ 27} "A. I believe they signed a lease in 1992. And they were in occupancy of that premises since that point yes.

{¶ 28} "Q. Do you know when the lease expired?

{¶ 29} "A. The lease expired had they not filed bankruptcy it would have been expired at this point.

{¶ 30} " * * *

{¶ 31} "Q. Do you recall when they did file bankruptcy?

{¶ 32} "A. They filed bankruptcy in May of 2003.

{¶ 33} "Q. Did they continue to operate after it was filed?

{¶ 34} "A. Yes they did.

{¶ 35} "Q. Do you remember—do you remember how long?

{¶ 36} "A. Approximately seven months.

{¶ 37} "Q. When did they cease operations then?

{¶ 38} "A. In or around the end of 2003.

{¶ 39} "Q. Do you know if the United States Bankruptcy Court ever rejected the lease between Big Bear and Sun Life?

{¶ 40} "A.  Yes they did.

{¶ 41} "Q.  Do you know when?

{¶ 42} "A.  January of 2004."

{¶ 43} Upon review, there was not sufficient evidence introduced at trial establishing that the lease had terminated prior to Big Bear's filing for Chapter 11 protection.  Furthermore, as we understand bankruptcy law Big Bear did not lose any property rights it had under the terms of the lease at the time the bankruptcy trustee rejected the lease.  Accordingly, we find that the trial court erred in determining that Sun Life was entitled to ownership of the rooftop units and openers/sensors based on their remaining on the property following the bankruptcy trustee's rejection of the lease.

{¶ 44} The first assignment of error is sustained.

## II, III

{¶ 45} The second and third assignments of error raise common and interrelated issues.  Therefore, we will address the arguments together.

{¶ 46} Appellant argues that the trial court's determination that the rooftop unit and openers/sensors were fixtures is against the manifest weight and sufficiency of the evidence.  We agree that it was against the weight of the evidence.

{¶ 47} When this court reviews a judgment challenged as being against the manifest weight of the evidence, we must defer to the findings of the trier of fact, and if the evidence is susceptible of more than one construction, we must give it the interpretation consistent with the judgment.  *Seasons Coal Co., Inc. v. Cleveland* (1984), 10 Ohio St.3d 77, 10 OBR 408, 461 N.E.2d 1273.  Thus, judgments supported by some competent and credible evidence that goes to all the essential elements of the case may not be reversed by a reviewing court as against the manifest weight of the evidence.  Id. at 80, 10 OBR 408, 461 N.E.2d 1273, citing *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578.

{¶ 48} Under Ohio law, a fixture is an article that was a chattel, but that, by being affixed to the realty, became accessory to it and parcel of it.  *Teaff v. Hewitt* (1853), 1 Ohio St. 511, 1853 WL 54.  In order for a chattel to become a fixture, it is necessary for the combined application of the following:

{¶ 49} 1.  Actual annexation to the realty, or something appurtenant thereto;

{¶ 50} 2.  Appropriation to the use or purpose of that part of the realty with which it is connected;

{¶ 51} 3. *The intention of the party making the annexation to make the article a permanent accession to the freehold—this intention being inferred from the nature of the article affixed, the relation and situation of the party making the annexation, the structure and mode of annexation, and the purpose or use for which the annexation has been made.* Zangerle v. Republic Steel Corp. (1945), 144 Ohio St. 529, 30 O.O. 160, 60 N.E.2d 170.

{¶ 52} Upon review of the evidence set forth in the statement of the facts and case above, the clear intent of the parties in the lease agreement and the project manual demonstrates that the rooftop unit and the openers/sensors were to be furnished and installed by Big Bear, as the owner or lessee, and were to remain the property of the lessee. The language of the lease clearly expressed the intention of the parties that equipment or other personal property installed or attached to the demised premises by or at the expense of Big Bear would remain the property of Big Bear. When the lease is read in conjunction with the project manual, we find that the trial court erred in determining that the rooftop unit and the openers/sensors were fixtures.

{¶ 53} The October 27, 2006 judgment entry of the Delaware County Court of Common Pleas is reversed, and the matter is remanded to the trial court for further proceedings in accordance with the law and this opinion.

Judgment reversed
and cause remanded.

DELANEY, J., concurs.

WISE, J., dissents.

WISE, Judge, dissenting.

{¶ 54} I respectfully dissent from the majority's opinion. I will not address the first assignment of error, as I believe that Assignments of Error II and III are dispositive of the ultimate issues.

{¶ 55} Based on our standard of review, I find that the trial court's judgment is supported by some competent and credible evidence, which goes to all the essential elements of the case. Therefore, this court may not reverse the trial court based upon a manifest-weight or sufficiency-of-the-evidence standard of review.

{¶ 56} The majority finds, "Upon review of the evidence set forth in the statement of the facts and case above, the clear intent of the parties in the lease agreement and the project manual demonstrates that the rooftop unit and the openers/sensors were to be furnished and installed by Big Bear, as the owner or lessee, and were to remain the property of the lessee." I do not disagree with

the majority that the lease read in conjunction with the project manual could be read to show an intent that the rooftop unit and openers/sensors were to be the property of the lessee. However, I believe that the trial court also had a reasonable interpretation of the facts, lease, and project manual, which led to the opposite conclusion.

{¶ 57} The trial court finds that the attachment of the rooftop unit and the openers/sensors to the leased premises made them fixtures. Fixtures are not, pursuant to the lease, whether paid for by the lessee or not, made to be the property of the lessee. Therefore, based upon our standard of review finding that there is some competent, credible evidence to support the trial court's finding that the rooftop unit and openers/sensors were in fact fixtures, I would affirm the trial court and find that the rooftop unit and openers/sensors remain the property of the lessor.