Bettman, J.
 

 This is an appeal from a decision of the Board of Tax Appeals of the state Department of Taxation denying relief to the appellant on her complaint seeking a reduction in the tax valuation of her property.
 

 The source of this court’s power to consider appellant’s right to relief is derived from Section 2, Article IV of the Ohio Constitution, giving this court “such revisory jurisdiction of the proceedings of administrative officers as may be conferred by law.” Section 5611-2, General Code, in providing an appeal to this court from a decision of the Board of Tax Appeals sets forth the test of our action as follows: “* * * if the Supreme Court is of the opinion that such decision of the Board of Tax Appeals is unreasonable or unlawful, it shall reverse and vacate same or it may modify same # *
 

 The appellant here complains that the decision of the Board of Tax Appeals upheld a tax valuation of her
 
 *35
 
 land for the year 1939 at $19,520, when the value should not have been more than $12,000. It must be recognized that an appeal of this nature turns on individual judgment based almost entirely on facts. It is with natural reluctance that this court would hold the decision of the Board of Tax Appeals “unreasonable” on an issue of fact; yet to permit this reluctance to be an absolute bar, would take all force out of the laws giving to property owners a right of review in this court upon tax appraisals by administrative boards. Ohio’s Constitution and statutes give to its citizens an appeal from the Board of Tax Appeals— admittedly an administrative board — to the Supreme Court of Ohio, where, in accordance with the precedents of judicial action, both sides may be fully heard and all the rights and safeguards connoted by the historic phrase “their day in court” may be had. What ever may be the burdens on this court, this right of our citizenship should not by us be lessened.
 

 Is then the decision of the Board of Tax Appeals “unreasonable” or “unlawful”?
 

 In support of the property owner’s complaint, the record discloses that the property in question is a lot on the north side of Prospect avenue in the city of Cleveland, about four hundred feet east of the intersection of Prospect avenue and East 22nd street, having a frontage of 80 feet on Prospect avenue and a depth of 200 feet; that an old residence with a tax value of $710 is upon the lot and is known at 2335 Prospect avenue; that the entire premises are rented as a low grade rooming house at $65 per month, the owner making all repairs; that the property was purchased by appellant in 1936 from the Superintendent of Banks of the state of Ohio for $7,600; that this sale was made by the superintendent after extended advertising and with the approval of the Court of Common Pleas of Cuyahoga county; that its tax valuation at that time was land, $22,400, building, $710, totaling
 
 *36
 
 $23,110; that, during the years following her purchase, appellant listed the property for sale with numerous real estate agents in Cleveland, stipulating an asking-price of $16,000 and a selling price of $12,000; and that the only offer to purchase ever received for the property was for $10,000, which the appellant agreed to accept but later declined for extraneous reasons. The record further discloses that the property is in a neighborhood made up of scattered business places, parking lots and rooming houses; that for a period of ten years past no business buildings have either been built or improved in the neighborhood; further, that the valuation of $19,520 placed upon appellant’s land amounts to $244 per front foot, and that a survey of sales made of real estate on the north side of Prospect avenue for ten blocks to the east of appellant’s premises shows that sale prices have averaged not more than $75 per front foot; that in the year 1938 a lot in the next block with a frontage of 43 feet and a depth of 189 feet which was on- the tax duplicate for approximately $13,000 was offered at $4,500; further, that a sale was had in the more prosperous year of 1941 of a comparable.property to appellant’s, located 72 feet east of appellant’s, having a frontage of 60 feet on Prospect avenue with a depth of 200 feet, for $14,000; and that on this property there was located a substantial residence building taxed at $3,000, which, deducted from the sale price of $14,000, would leave the land selling for $11,000, or $183 per front foot.
 

 The taxing authorities, in support of their valuation, introduced two items of evidence: First, an exhibit prepared by the county board of tax revision showing a gradual reduction in the appraisement of the land in question from $97,600 in 1925 to $19,520 in 1937, 1938 and 1939. There was also submitted the testimony of a real estate expert giving- his opinion that the value of the land was $20,000. There was, however, a failure on the part' of this expert to show
 
 *37
 
 a basis in. actual sales in tbe neighborhood for the opinion given, and practically none of the references by him to sales or leases of other property was comparable in nature or time to the property in question.
 

 Counsel for the taxing authorities strongly urge their recognition of the shrinkage in real estate valuations by reduction from $97,600 in 1925, to $19,520 in 1937, 1938 and 1939. The question, however, is not how much of a lowering in tax valuation has been made but, rather, what is the true value in money of the property for the year of the assessment.
 

 The record discloses that the property here involved is typical of what has become generally known as the blighted areas of modern American cities — areas which were residential in bygone decades, now not near enough to the city’s center to be used for prime business purposes, and not far enough out to be included in the present day suburban centers. Assessing authorities must recognize that the automobile has been an enormous force in decentralizing American cities, and has had a peculiarly blighting effect on those areas lying between the center of the city and its outlying suburbs. Industrial and commercial activities that before the day of the automobile might have been expected to advance progressively out from the city’s center, have to an appreciable degree vaulted over to multiple outlying suburban living and business centers, leaving large blighted areas behind. Neither the glories of the past nor the dreams of the future should befog the issue in the valuation of Ohio real estate. The test is single — its present true value in money. The classic guide in valuations for taxation provided in the Ohio Constitution, Section 2, Article XII, is the property’s “true value in money”; and Section 5560, General Code, provides that “each separate parcel of real property shall be valued at its true value in money. ’ ’ Coming to apply this test, and having in view the purchase price of the property in question in the
 
 *38
 
 admittedly comparable year of 1936, the unsuccessful attempts of the appellant to find a buyer for the property during the years 1937 to 1939 at far less than its tax valuation, and the sales made of neighboring and comparable property at prices considerably below the tax valuation here complained of, we hold that the decision of the Board of Tax Appeals in refusing to reduce the $19,520 valuation of the land in question was unreasonable. Accordingly the decision of the Board of Tax Appeals is reversed and the cause remanded for revaluation.
 

 Decision reversed and cause remanded.
 

 Weygandt, C. J., Turner, Williams, Matthias, Hart and Zimmerman, JJ., concur.