Williams, J.
 

 These two appeals from the same decision of the Board of Tax Appeals were argued and submitted together.
 

 If upon consideration by this court it is held that the adjudication, classifying machinery and equipment of the two refinery plants as real estate in making the assessment for the year 1932, did not constitute
 
 res judicata
 
 and therefore was not binding and conclusive in fixing the valuation for 1934, the decision of the Board of Tax Appeals herein is in that respect unlawful and must be reversed. In that event there will be no necessity to consider any other question made on either of the separate appeals. This court cannot say from the record here that all the property held to be real estate for the year 1932 was real estate as a matter of law and that therefore no prejudice resulted to the appellant company in any event.
 

 .It is necessary then at the outset to consider the question of
 
 res judicata.
 
 This court held in the former proceeding involving a complaint with respect to the same refinery plants but with reference to the tax year 1932 that the determination whether machinery and equipment, used in refining, are personalty or realty is a step or incident in fixing the value of land and improvements thereon for the purpose of taxation.
 
 Standard Oil Co.
 
 v.
 
 Zangerle, Aud.,
 
 133 Ohio St., 33, 11 N. E. (2d), 242. In accordance with that holding this court reversed the judgment of the court below, which had decided that the power to classify property as realty’ or personalty in a tax valuation proceeding did not exist, and remanded the cause to the Court of
 
 *509
 
 Common Pleas for further proceedings. Thereupon that court adjudged the machinery and equipment in question to be real estate. The Court of Appeals affirmed the judgment and this court overruled a motion to certify the record and dismissed an appeal as of right.
 
 Standard Oil Co.
 
 v.
 
 Zangarle, Aud.,
 
 136 Ohio St., 212, 24 N. E. (2d), 829. That adjudication, classifying the disputed property as realty, is now claimed to be a bar to a determination of the question of classification for a subsequent year in the instant proceeding.
 

 Before the year 1932 the machinery and equipment involved here and in existence then was taxed as part of the real estate without question being raised. Previously, Section 2 of Article XII of the Constitution required all property, real and personal, to be taxed by uniform rule according to its true value in money, and for years the refining machinery and equipment which are the subject of dispute here were taxed as a part of the real estate without complaint on the part of the taxpayer, for the simple reason that so far as the amount of taxes payable was concerned there would be no difference whether such property was taxed as realty or personalty. Thereafter, Section 2, Article XII, was changed (effective January 1, 1931) so as still to require land and improvements thereon to be taxed by uniform rule according to their true value in money but to permit personal property to be classified and subjected to varying prescribed rates of taxation.
 

 Pursuant to such constitutional amendment the Classified Property Tax Law, Section 5323
 
 et seq.,
 
 General Code (114 Ohio Laws, 714), was enacted. By virtue of Sections 5385, 5386 and 5388, General Code, contained therein, a manufacturer (which term as defined includes a person engaged in refining) was required, beginning with the year 1932, to list all engines, ma
 
 *510
 
 chinery, tools and implements used in manufacturing or refining and not a part of the improvements on land. The personal property so listed was made taxable at 50% of its true value in money, and certain other personal property at 70% thereof, all in contradistinction to real estate which was still listed and taxed at 100% of its true value. Machinery and equipment which are a part of the improvements on land within the meaning of the Constitution, however, must be taxed at their true value in money in accordance with the constitutional requirements. Of course the statute cannot change the organic law and does not attempt to do so. “All engines, machinery, tools and implements” are expressly excepted from the operation of the statute when they are to be “legally regarded as improvements on land and considered in arriving at the value of real property assessed for taxation.” Essentially the statute applies only to machinery and equipment that are personalty. Consequently, “engines, machinery, tools and implements” used in refining are taxable as personal property at 50% of their true value unless they are to be considered part of the realty because elements are present which make them fixtures. These changes in the organic and statutory lav; explain the course of the appellant company herein as to years subsequent to 1931.
 

 The general rule as to
 
 res judicata
 
 is well established and prevents a relitigation of any issue that was or could have been litigated in the prior action.
 
 Conold
 
 v.
 
 Stern,
 
 138 Ohio St., 352, 35 N. E. (2d), 133, 137 A. L. R., 1003;
 
 Hixon
 
 v.
 
 Ogg,
 
 53 Ohio St., 361, 42 N. E., 32.
 

 That rule has not been applied uniformly in cases involving taxation. For instance it has generally been held that an action to collect taxes for a given year is not determinative of the rights of the same parties in a later suit between them for the collection of taxes on the same property for a subsequent year.
 
 Georgia Rd.
 
 
 *511
 

 & Banking Co.
 
 v.
 
 Wright, Compt. Genl.,
 
 124 Ga., 596, 53 S. E., 251;
 
 City of Davenport
 
 v.
 
 C., R. I. & P. Rd. Co.,
 
 38 Iowa, 633;
 
 City of Newport
 
 v.
 
 Commonwealth,
 
 106 Ky., 434, 50 S. W., 845, 45 L. R. A., 518;
 
 Louisville Bridge Co. v. City of Louisville,
 
 22 Ky. L., 703, 58 S. W., 598;
 
 Louisville Bridge Co.
 
 v.
 
 City of Louisville,
 
 23 Ky. L., 1655, 65 S. W., 814;
 
 Michigan Southern & Northern Indiana Rd. Co.
 
 v.
 
 Aud. Genl.,
 
 9 Mich., 448;
 
 Lake Shore & Michigan Southern Ry. Co.
 
 v.
 
 People,
 
 46 Mich., 193, 9 N. W., 249;
 
 C., B. & Q. Rd. Co.
 
 v.
 
 Cass County,
 
 72 Neb., 489, 101 N. W., 11, 117 Am. St. Rep., 806;
 
 Bank
 
 v.
 
 City of Memphis,
 
 101 Tenn., 154, 46 S. W., 557;
 
 State
 
 v.
 
 Bank of Commerce,
 
 95 Tenn., 221, 31 S. W., 993. See, also,
 
 Board of Supervisors
 
 v.
 
 Sioux City Stock Yards Co.,
 
 223 Iowa, 1066, 274 N. W., 17;
 
 Adams, Agent,
 
 v.
 
 Yazoo & M. V. Rd. Co.,
 
 77 Miss., 194, 24 S., 200, 60 L. R. A., 33. Contra:
 
 Tait, Collector of Int. Rev.,
 
 v.
 
 Western Maryland Ry. Co.,
 
 289 U. S., 620, 77 L. Ed., 1405, and federal cases cited therein. The rationale of the underlying doctrine is that each year’s taxes are the basis of a distinct and separate cause of action.
 

 In 3 Cooley on Taxatiori (4 Ed.), 2648, Section 1342, the trend of the authorities is summarized in this manner :
 

 “Upon the question whether a judgment establishing a liability to pay taxes for certain years is, in a subsequent action between the same parties,
 
 res judicata
 
 as to the liability for taxes of a succeeding year when the facts affecting the liability are the same in the two cases, the authorities do not agree. It is held in some states that the judgment for a tax is conclusive as to that tax merely, and in suits for taxes of other years is important only as a precedent. Decisions of the federal Supreme Court maintain the contrary doctrine, but have not met the approval of the state tribunals.”
 

 
 *512
 
 Analysis reveals that in this jurisdiction there is a pertinent distinction between a proceeding for the assessment of land and improvements thereon for taxation and an action to collect unpaid taxes. The former, a mere statutory proceeding begun by filing a complaint, may, when the question is raised as it is here, involve a classification of property; and the latter, a suit for money only, does not involve in the same way the element of classification by the taxing authorities. In this connection the pronouncements of the federal Supreme Court are helpful and instructive. In the ease of
 
 United States
 
 v.
 
 Stone & Downer Co.,
 
 274 U. S., 225, 71 L. Ed., 1013, it was held that
 
 res judicata
 
 does not apply to the classification of property for tariff purposes. Chief Justice Taft, in the opinion, used this language:
 

 “We think that, not only was it within the power of the Court of Customs Appeals to establish the practice, [of not applying
 
 res
 
 judicata] but that it was wise to do so. The effect of adjudicated controversies arising over classification of importations may well be distinguished from the irrevocable effect of ordinary tax litigation tried in the regular courts. * * * The importance of a classification and its far-reaching effect may not have been fully understood or clearly known when the first litigation was carried through. One large importing house may secure a judgment in its favor from the Customs Court on a question of fact as to the merchandise of a particular importation, or a question of construction in the classifying statute. If that house can rely upon a conclusion in early litigation as one which is to remain final as to it, and not to be reheard in any way, while a similar importation made by another importing house may be tried and heard and a different conclusion reached, a most embarrassing situation is presented. The importing house which has, by the principle of the thing ad
 
 *513
 
 judged, obtained a favorable decision permanently binding on the Government will be able to import the goods at a much better rate than that enjoyed by other importing houses, its competitors. Such a result would lead to inequality in the administration of the customs law, to discrimination and to great injustice and confusion. In the same way, if the first decision were against a large importing house, and its competitors instituted subsequent litigation on the same issues, with new evidence or without it, and succeeded in securing a different conclusion, the first litigant, bound by the judgment against it in favor of the Government, must permanently do business in importations of the same merchandise at great and inequitable disadvantage with its competitors.”
 

 Likewise, in the case of
 
 Tait, Collector of Int. Rev.,
 
 v.
 
 Western Maryland Ry. Co., supra,
 
 this pronouncement was made:
 

 “We cannot agree'that the decision in
 
 United States
 
 v.
 
 Stone & Downer
 
 requires a reversal of the judgment. The Court of Customs Appeals had from its organization consistently held the rule of
 
 res judicata
 
 inapplicable to its decisions as to the classification of imported commodities for the imposition of tariff duties. For some years that court’s jurisdiction of customs cases was exclusive and final, and its practice, in this respect, had come to be settled. After Congress granted a night of review we were urged to overturn the practice and to apply the doctrine of estoppel by judgment in this class of litigation. The court refused, to do so, not only because of the settled practice, but also on account of the unique character of the questions presented under the tariff acts. The ruling was justified by considerations which are absent in tax litigation; and the court mentioned and recognized the authority of the precedence for estoppel by judgment in the latter.”
 

 
 *514
 
 The same inequalities, injustices and discriminations would arise out of the classification of property for the purpose of taxation, if the determination of the extent to which machinery and equipment placed on land was real estate should forever after be binding in making assessments for subsequent years. The classification of importations for imposition of duty bears so close an analogy to the classification for taxation as to make the principles pronounced likewise applicable thereto. Thus the decisions of the federal Supreme Court are in principle at least authority for the conception that the doctrine of
 
 res judicata
 
 does not apply to the instant proceeding so p.s to bar a classification of the disputed property for the year 1934.
 

 While the authorities heretofore cited and discussed are of value in reaching a conclusion herein, in the final analysis paramount consideration must be given to two things, (a) the statutes governing such proceedings in respect to assessments, and (b) the scope of the former adjudication by the Court of Common Pleas.
 

 We come then to the question whether the determination of the assessment upon complaint by the taxpayer is all in all limited by statute to the particular year for which the complaint is made.
 

 Upon looking to other jurisdictions we find that it is held that an assessment fixes value for a definite date or year and that an assessment for one year is not determinative of or conclusive as to an assessment for a subsequent year.
 
 Trustees of Estate of Flynn
 
 v.
 
 Board of Review of City of Des Moines,
 
 226 Iowa, 1353, 286 N. W., 483;
 
 People, ex rel. Hilton,
 
 v.
 
 Fahrenkopf, Commr.,
 
 279 N. Y., 49, 17 N. E. (2d), 765;
 
 Bellingham Community Hotel Co., Inc., v. Whatcom County,
 
 12 Wash. (2d), 237, 121 P. (2d), 335; 34 Corpus Juris, 966, Section 1381.
 

 We quote from
 
 People, ex rel.,
 
 v.
 
 Fahrenkopf, supra:
 

 
 *515
 
 “It is of the essence of an assessment that it fixes value as of a certain time. Each annual proceeding is' separate and distinct from every other. Year by year an assessor must use his own judgment and must verify the roll. * * * From these considerations it results that a prior judicial determination of value does not legally bind successor assessors.”
 

 Under the statutes which governed the proceedings with reference to the assessment of the real property involved herein for the year 1932, it was the duty of the board of revision to consider the complaint relating to the “valuation or assessment” and increase or decrease the valuation, correct the assessment, or order a reassessment by the original assessing officer (Section 5597, General Code). Thereupon from an adverse decision of the board of revision the taxpayer was permitted to take an appeal to the Tax Commission and its determination was made pursuant to Section 5611-1, General Code, which as then in force (107 Ohio Laws, 550) read as follows:
 

 “Whenever the Tax Commission of Ohio determines the
 
 valuation, or liability, of property for taxation,
 
 whether in ease of an original valuation or other original proceeding of such board, or in case of a determination of an appeal from the decision of a county board of revision, it shall, by registered mail, certify its action to the person in whose name the property is listed, or sought to be listed, at the same time and in the same form in which such action is, certified to the county auditor, and such determination shall become
 
 final and conclusive for the current year,
 
 unless reversed, vacated, or modified as hereinafter provided.” (Italics ours.)'
 

 This provision includes
 
 liability
 
 as well as
 
 valuation
 
 and so would expressly apply to classification of property as realty or personalty. Moreover we think that the maxim
 
 expressio unius est exclusio alterius
 
 is ap
 
 *516
 
 plicable and therefore the recital that a determination became final and conclusive for the current year necessarily carries the implication that it is not final and conclusive for subsequent years.
 

 The taxpayer was given the right to file a petition in error in the Court of Common Pleas to obtain a reversal, vacation or modification of the decision of the Tax Commission and the court’s power was limited by this provision: “No determination of the Tax Commission as to the value of property for taxation shall be reversed, vacated, or modified unless it is shown by clear and convincing evidence that the value of the property, as determined by the Tax Commission, is not the true value in money of such property.” Section 5611-2 as then in force (107 Ohio Laws, 551).
 

 When the Court of Common Pleas conducted the hearing which resulted in the adjudication for the year 1932, its inquiry could have and did have no greater scope than that of the Tax Commission; and when that court affirmed the decision of the Tax Commission, that decision remained final and conclusive for the current year only,
 
 i. e.,
 
 for the year 1932. Likewise the affirmance by the Court of Appeals left the decision and adjudication
 
 in statu quo.
 

 The amended statute under which the instant proceeding was taken for the year 1934 and by which the Board .of Tax Appeals became successor to the Tax Commission, though not of controlling importance on the inquiry at hand, contains a similar provision which reads as follows: “In the case of an appeal from a decision of a county board of revision the Board of Tax Appeals shall ascertain and determine the true value in money of the property, the valuation or assessment of which as determined by the county board of revision is complained of, and shall determine the
 
 liability of the property for taxation,
 
 if that'question is in issue, and its decision and the date of the entry
 
 *517
 
 thereof upon its journal shall, by registered mail, be certified by it * * L
 

 “The decisions of the Board of Tax Appeals may affirm, reverse, vacate or modify the
 
 tax assessments, valuations, determinations, findings, computations or orders
 
 complained of in the appeals or applications determined by it and its decisions shall become final and conclusive for the current year, unless reversed, vacated, or modified as in Section 5611-2 of the General Code of Ohio provided.” Section 5611-1 (118 Ohio Laws, 354), effective May 15, 1939. (Italics ours.)
 

 Section 5611-2, in the form applicable to the instant proceeding provided for an appeal from the decision of the Board of Tax Appeals to this court, which has power to reverse, vacate,or modify the decision below when found unreasonable or unlawful.
 

 It is clear, then, that the statutes relating to the former as well as the instant proceeding made the determination of the administrative boards cover
 
 not only valuation but also liability of the property for taxation for the current year,
 
 which latter would include classification of property as real or personal property. Obviously the courts on review or appeal could not render a judgment that would affect the substantive rights of taxpayers for subsequent years.
 

 We turn, now, to the scope of the former adjudication by the Court of Common Pleas. The journal entry recites that it is reviewing “that portion of the final order of the Tax Commission of Ohio, dated March 9,1935, wherein,
 
 for the year 1932, certain property of The Standard Oil Company ivas classified as real property,”
 
 that
 
 “the court, considering only the question of the classification as real or personal property of the property assessed as realty by the auditor of Cuyahoga for the tax year 1932,
 
 and without considering the question of the true value of specific items of such property, finds that the said property is real
 
 *518
 
 property and was properly assessed as real property, and that the final order of the Tax Commission, so far as it relates to the classification of the said property, was in all respects proper,” and that it is adjudged “that the
 
 final order of the Tax Commission of Ohio, in so far as it classifies said property as real property
 
 * * * is hereby affirmed.” (Italics ours.)
 

 Since both the statutes and the former adjudication restricted the classification of the property as real estate to the then current year, namely, 1932, classifications for subsequent years were not affected.
 

 For the reasons given the decision of the Board of Tax Appeals is unlawful in so far as it was held therein that the determination of the classification of property was barred by the defense of
 
 res judicata.
 

 The decision is therefore reversed and the proceeding is remanded to that administrative body for retrial.
 

 Decision reversed and proceeding remanded.
 

 Weygandt, C. J., Matthias, Hart, Zimmerman, Bell and Turner, JJ., ..concur.