Sohngen, J.
 

 This appeal is from a decision of the Board of Tax Appeals, brought under authority of Section 5611-2, General Code, determining the valuation for taxation for the tax year 1944 of the land and building of The B. F. Keith Columbus Company, appellant, which property is located in Columbus and known as the Palace Theater.
 

 The auditor of Franklin county appraised the property for taxation for the year 1944, as follows: land, $170,250; building, $512,400; total, $682,650.
 

 
 *254
 
 The Board of Revision refused to grant any reduction in this valuation.
 

 On appeal the Board of Tax Appeals modified the auditor’s valuation, and valued and assessed, as follows, the property in question for the year 1944: land, $170,250; building, $468,736; total, $638,986.
 

 The appellant seeks a reduction of the valuation as determined by the Board of Tax Appeals.
 

 The valuation and assessment for taxation for the tax year 1943 was: land, $92,760; building, $228,850; total, $321,610.
 

 The auditor, (by his assessment, increased the appraised value of this property by nearly 100% over the appraised value for the tax year 1943, which assessment, with a slight reduction, was affirmed by the Board of Tax Appeals. The appellant claims the decision of the Board of Tax Appeals is unreasonable and unlawful. • '
 

 The property in question consists of a parcel of land, 157.5 feet on Lynn street by 115 feet on Wall street, under a perpetual lease to the appellant, on which is situated a fireproof, steel frame, brick wall theater building. The record discloses that the theater entrance is located at 36 West Broad street. The evidence shows that this property does not abut on Broad street but is 72.5 feet north of same. The theater does have an entrance easement 42 feet in width beginning at the corner of West Broad and North Wall streets, extending back 47.8 féet, then widening to 62.5 feet and going back a further distance of 24.7 feet to the appellant’s property line. The appellant also has an easement running from North Wall street to Front street. The evidence shows that appellant pays a rental of $18,000 a year for the above land, including the easements, but pays no taxes on the easements.
 

 The question for determination on this appeal is whether the valuation as determined by the Board of
 
 *255
 
 Tax Appeals for the tax year 1944 is unreasonable or unlawful. Section 5611-2, General Code.
 

 ■ With respect' to the valuation of the building involved, appellant offered the testimony of R. T. Hoiclge, an architect of New York City, who qualified as an expert and who was the architect of the Palace Theater in Columbus when it was built in 1926. The appellees offered the testimony of James M. Cleminshaw who was connected with the J. M. Cleminshaw Company, appraisal engineers of Cleveland, Ohio, and who also qualified as an expért.
 

 A careful review of. the testimony of Iioidge and Cleminshaw, with respect to the building involved, discloses that there is no disagreement between them as to (1) the number of cubic feet in the theater building and (2) the replacement cost of 40 cents per cubic foot for the year 1944. Both witnesses asserted there are areas in the building which in 1944 were useless and valueless and should be eliminated in determining the value of the building, but there is disagreement between them as to the extent of these areas. The other issue upon which the expert witnesses disagree is the rate of depreciation which should be applied annually to the theater structure from 1926, when it was built, until 1944, a period of 18 years.
 

 It appears from the evidence of Cleminshaw that he made a careful appraisal of the building. He stated:
 

 \
 
 “I had a card record showing the outside measureihents of the building. I obtained permission to go through it. I took voluminous notes of the construction and interior finish. I noted the kind of foundation walls, the type of structure, the exterior finish, the interior finish and the plumbing and the heating and the lighting. I noted that it was fully air-conditioned, there was a vacuum cleaning system. In other words I made note of all structural details. Noted the build
 
 *256
 
 ing was of fireproof construction, steel frame, and steel trusses. That it had one passenger elevator, that there was tiling in the toilet rooms. That it was a particularly high-grade and ornately finished building. * * * I cubed the building at 1,831,412 cubic feet. ® * * I did bear in mind that there was a very large stage, with a very high fly loft above it, which is perhaps not essential to the theater as it exists today. I talked to the manager and inquired as to how many stage presentations per year they put on and got the information substantially as was given in testimony here. So all of these factors had to be considered, the remaining expectancy of useful life of the structure, its desirability as a theater, accrued obsolescence, and arrived at a total depreciation of 30%. In arriving at the reproductive value I took 80% of my 100%, of $941,165, and placed a reproductive value of $731,000, from which I subtracted 30%, which gave a physical value of $512,400.”
 

 The Board of Tax Appeals modified Cleminshaw’s formula by allowing 36% instead of 30% for total accrued depreciation from all causes, as a fair and reasonable amount to be allowed for depreciation on the building, and found that the true value.in money of the building, after giving it a depreciation of 36%, was $468,736.
 

 Hoidge testified that the Palace Theater was built as. a vaudeville theater in 1926; that vaudeville entertainment required a vast structure back of the curtain, a large stage structure, dressing rooms for actors, bathrooms, parlors, restrooms, nurseries, space for the care of animals, and other storage space and facilities used in vaudeville acts; that during the days of vaudeville, theaters were built with high ceilings; that with the development of sound in pictures, vaudeville died in 1930; that the excess retiring rooms, high ceilings in the auditorium, big stage and elaborate dressing
 
 *257
 
 rooms have become obsolete and useless and are not reflected in any commercial value of the premises; that the overbuilt sections of the Palace Theater, which are obsolete and of no value, total 566,000 cubic feet; and that eliminating the 566,000 cubic feet as not needed and applying depreciation at the rate of
 
 3%
 
 per annum for 18 years to the remainder, the true value of the Palace Theater building as of 1944 would be $265,000.
 

 It is the contention of the appellant that since motion pictures have taken the place of vaudeville in this theater, the elaborate dressing rooms, stage properties and decorations are no longer of any value to appellant and should be eliminated-in assessing the value of the property; and that a rate of depreciation higher than the
 
 2%
 
 allowed by the Board of -Tax Appeals should be applied to the remainder.
 

 The record indicates that large areas of this theater, which were built for the purpose of vaudeville performances, and the elaborate public waiting rooms are no longer needed or used by the appellant. Due to necessary maintenance, they constitute more of a liability than an asset to the appellant. These areas have become subject to what is known as functional depreciation. Functional depreciation occurs where property, although still in good physical condition, has become obsolete or useless due to changing business conditions and thus to all intents and purposes valueless to the owner. There can be no hard-and-fast rule as to valuation or depreciation. In this case, although Cleminshaw testified that “I did bear in mind that there was a very large stage, with a very high fly loft above it, which is perhaps not essential to the theater a® it exists todáy,” the valuation which he reached indicates that he gave no force and effect to the condition which he asserts he bore in mind. The transcript of his testimony discloses:
 

 
 *258
 
 “Q. Now let us come to the question of depreciation and obsolescence of theaters. You took, as I understand it, the replacement cost of this theater at 40c per , cubic foot and then allowed 30% depreciation for the 18 years of life of the theater, which is at the rate of 1 2/3%, I believe, per year, is that correct? A. It happens to work out at that.
 

 ‘■‘Q. And that one and two-thirds per cent, did that represent physical depreciation or function depreciation or obsolescence or what did it represent? A. It represented depreciation, however caused.
 

 “Q. You are familiar with the card of the auditor’s office in that respect. Did you make out those cards? A. I made out the original card.
 

 “Q. Eeading from this card, which is the original card of the auditor office, which you prepared with respect to this property, I find the age of the theater 1926, physical depreciation 30%, functional depreciation
 
 nothing,
 
 replacement value, $732,000, physical value, $512,000. Now directing your attention to the question of normal depreciation, functional, physical and otherwise and obsolescence of theaters and when I speak of the normal depreciation and obsolescence, I mean that applies to any theater and I am including for the moment the special obsolescence which might arise from having over-built, parts of the theater which have become useless. I am speaking of the part that is left of the obsolescence that is applied to all theaters, the normal obsolescence and you would place that at 1 2/3% ? A. I placed it at a total of 30%, total accrued depreciation from all causes.” (Italics ours.)
 

 Hoidge testified that the excess obsolete space totaled 566,000 cubic feet. Cleminshaw in his testimony admitted there was special obsolescence but disputed the amount. The transcript of his testimony discloses further:
 

 
 *259
 

 ‘ ‘
 
 Q. All right, Mr. Cleminshaw, we will try to stick right to a few questions, because the hour will be getting late. I am very much interested in your approach to this problem, but I would like to confine ourselves to a few questions. The extent to which there is surplusage, unused space, which should be taken into consideration, you are not prepared to concede, but you do concede that there is a large amount of space there, which should be taken into consideration as obsolescent, is that correct? A. There is some space.
 

 “Q. Now you heard Mr. Hoidge testify and you heard his qualifications as an architect. Don’t you think that his exposition of that is sound? A. To a limited extent. I have already stated to what extent I agree with him, and to which I disagree.
 

 “Q. You disagree with the height of the ceiling, which involves a great amount of space, but the back stage and other parts, dome [some] of the dressing rooms and equipment you concede that there is surplus-age, which lends itself to obsolescence? A. Yes, I do.”
 

 It appears from this testimony that Cleminshaw disputed the item of excess ceiling height, resulting in 168,705 cubic feet, which he considered not to be obsolete and useless. Allowing for this disputed area, there still appears to be an undisputed balance of sur- • plus .space which is obsolete and of no commercial value, represented by the excess stage, dressing rooms, and basement space, approximating 21% of the total cubage of the entire theater. The Board of Tax Appeals allowed a total depreciation and obsolescence factor of 36%. Deducting the undisputed 21%, as admittedly of no commercial value and obsolete, from the 36% allowed by the Board of Tax Appeals as
 
 a
 
 total depreciation and obsolescence factor, there is left 15% for depreciation for the balance of the structure for a period of 18 years, or a little less than 1% per year. It appears to the majority of this court that
 
 *260
 
 neither the auditor nor the Board of Tax Appeals seems to have considered seriously the item of functional depreciation. In that respect we think the decision of the Board of Tax Appeals is unreasonable.
 

 We now come to the question of the value of the land.
 

 The tract here in question has an area, of 18,112% square feet with a' frontage on two alleys, but no frontage on any main street. Access from Broad street to this area is gained through an easement.
 

 The witness for the appellees was the appraiser who made the original appraisement for the county auditor. The record shows that he considered the front-foot valuation and the economic valuation. His front-foot valuation was $2,529.63. Applying this front-foot valuation to the land in question, the witness used a depth table which gave the value of this area as 40% of the whole, amounting to $159,367. To this value of $159,367 he added $10,880 for corner influencé, which gave, according to his testimony, a total of $170,248. A majority of this court concludes that the addition of $10,880 for corner influence is unreasonable.
 

 Upon a consideration of the record, it is the opinion of this court that the finding of the Board of Tax Appeals as to the value of the land here in question is unreasonable.
 

 Wherefore the court, finding the decision of the Board of Tax Appeals unreasonable, remands the case to the Board of Tax Appeals for its further consideration consistent with this opinion.
 

 Cause remanded.
 

 Weygandt, C. J., Hart, Zimmerman and Stewart, JJ., concur.
 

 Turner and Matthias, JJ., dissent. ,