Gibson, J.,
dissenting. In the absence of evidence to the contrary, it is generally assumed that an administrative agency, such as the Board of Ta,x Appeals, has acted, is acting and will continue to act in compliance with the statutes and laws of this state. 1 Ohio Jurisprudence (2d), 607, Administrative Law and Procedure, Section 216; 42 American Jurisprudence, 680, Public Administrative Law, Section 240. I, therefore, fail to comprehend. what this court expects to accomplish by a mandate requiring the board to perform its statutory duties. To issue a writ to compel the board generally to observe its statutory duties, without a finding that the board did not and will not observe such duties, appears -to be a mere duplication of the command of the General Assembly in the applicable statutes. 35 Ohio Jurisprudence (2d), 263, Mandamus, Section 17.
■ Although the court refers to certain statistical data possessed by the board, which allegedly show that real property of various classes in various counties of the state and in Cuyahoga County has been assessed unequally, it does not state whether such data are reliable or sufficient to show discrimination. In fact, the court in its syllabus and the concluding paragraph of the opinion clearly indicates that the board must find “discrepancies ’ ’ in the tax assessment before it is to direct such an- order “as is necessary” to the county auditor to equalize assessments.
. . _ The statistical data, to which reference is made, apparent *415 ly were gathered by a small number of board employees for the years 1946 through 1959, in the following manner :
1. In the larger counties during four months out of the. year every recorded sale of real estate was checked. In the. smaller counties all recorded sales during the year were checked:,
2. Sales of under $1,500 were excluded.
3. Sales from or to a city, county or other political sub-: division or forced sales of any kind were excluded.
4. Where a family relationship existed between the buyer, and seller, the sales were excluded.
5. The sales price was determined by the amount of revenue . stamps on the deed. Deeds were also checked for any mortgages which continue.
Since 1954, the board’s requirement that the annual abstracts submitted by county auditors be segregated to. show' the various classes of real property has supplied the board with - additional statistical information.
Without a detailed analysis of the statistical data, it is apparent that such do not constitute a valid method of ascertain- ■ ing value of property. It is common knowledge that in many counties the relationship between the price paid and the amount ;• of revenue stamps affixed is theoretical only. Even if it is as-. sumed that all vendors affix not less than the statutorily re-:. quired revenue stamps, there is nothing to prevent a vendor-from affixing more stamps than required. A sample of real estate transactions consummated during one-third of- the year : is of doubtful statistical validity. Further, the law has long/, recognized that each piece of real estate is unique, and that, no j two pieces of realty are the same in location, quality, or valúe;)
Before the court, in this action in mandamus originating here, finds that the board has failed to perform its clear legal-; duty, it surely should find on the basis of the evidence presented^ that there has been a discriminatory assessment of relator.’A-property. See Rollman & Sons Co. v. Board of Revision;of Hamilton County (1955), 163 Ohio St., 363. In view of the mo reliable character of the statistical data presented, this would appear to be impossible to do.
Certain language used by the court in rationalizing its orders to the board to obey the law will, in my opinion, cause endless'.’ *416 difficulties. The effect of the majority opinion is to substitute “sales price” or “market value” for the constitutional and statutory standards of “value” and “true value in money”. On its face, a rule that the meaning of “value” (as used in Section 2, Article XII, Ohio Constitution) or “true value in money” (as used in Chapter 5713, Revised Code) is only the amount of money for which property may be exchanged, i. e., the sales price, seems to have the elusive virtue of simplicity. But, as is so often true, the social, economic and political nuances of the problem presented here are neither simple nor subject to simple solution.
Neither the Constitution nor the statutes fix any method for the valuation of property. The Constitution requires only that land and improvements thereon shall be taxed “by uniform rule according to value”, and the statutes provide for separate listing of the land and the buildings thereon at their “true value in money”. This court in a series of cases has considered a number of methods of valuing real estate for'tax purposes.
In State, ex rel., v. Jones, Aud. (1894), 51 Ohio St., 492, 505, this court, in finding that goodwill of a business establishment tends to increase the earning capacity of the property and hence its value, noted that “taxation by a uniform rule does not necessarily demand that there should be the same mode of assessment for every species of property, without regard to any classification.” This court, in considering the various elements making up “true value in money,” stated the law in the third paragraph of the syllabus of State, ex rel., v. Halliday (1899), 61 Ohio St., 352, as follows:
“In ascertaining the true value in money of such [personal] property in the hands of its owner, every fact or circumstance, brought to the attention of the person or officer who is charged with the duty of fixing that value, and which in its nature bears on the question, should be considered by him. One of those circumstances is the earnings or rental of such article.”
The brief of the Board of Revision in American Steel & Wire Co. of New Jersey v. Board of Revision of Cuyahoga County (1942), 139 Ohio St., 388, suggested that there were three methods of valuing real estate, viz., (1) reproduction cost less depreciation or “physical”, (2) comparative sales or “mar *417 ket”, and (3) “economic” or capitalized income. In discussing these methods of valuing property for tax purposes, this court, at page 391, said:
“With respect to these methods, it should be observed that, while reproduction cost, depreciation, opinions as to market value, and income may be given proper consideration, true value is a question of fact to be determined by the taxing authorities. It does not appear from the record that the Board of Tax Appeals applied any particular method exclusively but merely determined the true value of the buildings on each parcel from all the evidence. This course was in conformity to law.
“A great deal is said by the board of revision about uniformity ; but it should be remembered that the fixing of the true value of each lot or tract with improvements thereon is a separate proceeding and does not involve the consideration of all the parcels of land within a given area at the same time. When determinations as to the true value are reached by the taxing authorities as to each tract or lot of land and improvements thereon throughout a taxing district, though in separate inquiries or proceedings, taxation based upon valuations so fixed is essentially by uniform rule within the meaning of the Constitution and statutes. In other words if the true value of each parcel of real estate is fixed separately then there is such uniformity between all parcels as is required by law.” (Emphasis supplied.)
The unanimous court, continuing to discuss true value in money, stated, at page 392 :
“In determining the value of land or the improvements thereon all the facts and circumstances relating to the nature of the property, its availability for the purpose for which it was constructed or for any other purpose for which it may be used, its obsolete character, if such it has, and every other factor that tends to prove the true value in money of the land and the improvements thereon, and evidence of facts occurring after as well as before the tax lien day of the year involved within reasonable limitations are admissible.” (Emphasis supplied.)
This opinion by the court is squarely contrary to its opinipn in Ramsey v. Board of Revision of Franklin County (1943), 141 Ohio St., 366, where it is said that sale price is not the controlling factor, but, if the sale is voluntary, it is only one factor. *418 The sale price of the property there was $3,000, yet the assessed true value iu money of $7,500, as found by the Board of Tax Appeals, was held not unlawful or unreasonable. See, also, B. F. Keith Columbus Co. v. Board of Revision of Franklin County (1947), 148 Ohio St., 253, where it said that, in determining the value of property for the purpose of taxation, the assessing body must take into consideration all factors, including functional depreciation, which affect the value of the property.
It is also relevant to note that the Board of Tax Appeals, acting pursuant to statutory authority, has promulgated uniform rules and regulations relating to the valuation of real property in the 88 counties. According to such rules, property is classed as (1) residential, (2) industrial, (3) commercial, (4) agricultural, and (5) vacant lots and tracts. “True value in money” of the various classes of real property is defined in such rules and regulations as “the value to be determined, in the first instance, by the county auditor as the assessor of real property in his county on consideration of all the facts relating to the physical nature and construction of the property, its availability for the purpose for which it was acquired or constructed, or for the purpose for which it is, or may be, used, and every other applicable factor which may tend to indicate the value of the property such as actual cost, value as indicated by reproduction cost, physical and functional depreciation and obsolescence, if any, market value, and the income capacity of the property, if any. The assessor shall likewise take into consideration the location of the property and the valuations of similar properties in the same locality.” There is no suggestion by relator that these rules and regulations are the result of an unreasonable or unlawful exercise of the rule-making power of the Board of Tax Appeals. The absence of such a suggestion is understandable in view of the fact that they were found not to be unreasonable or unlawful in Carney, Aud., v. Board of Tax Appeals (1959), 169 Ohio St., 445.
Still another reason exists for denying the writ in this case. For each and every taxable year since 1954, the county auditors have made out and transmitted to the Board of Tax Appeals abstracts of all the real property in the taxing districts of the counties, in which have been set forth the aggregate amount *419 and valuation of each class of real property in such counties and in each taxing district. In each of such years, the board, acting pursuant to Section 5715.24, Eevised Code, has determined that the various classes of real property in the several counties, municipal corporations and taxing districts have been assessed at true value in money for the years in which Section 5715.24 required assessment at “true value thereof in money” and at “taxable value” for the years in which Section 5715.24 has required assessment at taxable value. There is not now pending before the Board of Tax Appeals an abstract of the real property of Cuyahoga County for the consideration and approval of the board under the provisions of Section 5715.24, Eevised Code.
For the foregoing reasons, in my opinion, the writ should be denied in the instant case.