[This opinion has been published in *Ohio Official Reports* at 80 Ohio St.3d 26.]

FRESHWATER ET AL., APPELLANTS, *v.* BELMONT COUNTY BOARD OF REVISION
ET AL., APPELLEES.

[Cite as *Freshwater v. Belmont Cty. Bd. of Revision*, 1997-Ohio-362.]

*Taxation—Real property valuation—BTA's determination of true value in a given
year is not controlled by value assessed for prior years—Appraisers'
approach to valuation must be based on facts as they existed as of the tax
lien date.*

(No. 96-2692—Submitted May 28, 1997—Decided October 8, 1997.)

APPEAL from the Board of Tax Appeals, No. 95-T-1213.

———————————

{¶ 1} On March 9, 1995, appellants, Ralph D. and Mary E. Freshwater
("Freshwaters"), filed a real property valuation complaint with the Belmont County
Board of Revision ("BOR") for tax year 1994.  The Freshwaters' complaint
challenged the county auditor's valuation of an apartment development they own
in Shadyside.

{¶ 2} The apartment development is located on three parcels totaling 6.7
acres, with improvements consisting of four two-story brick buildings, built
between 1971 and 1977, and a paved parking lot.  The four buildings contain a total
of fifty one- and two-bedroom, one-bath apartments, plus a manager's apartment,
which contains an extra bath and bedroom.

{¶ 3} The county auditor valued the property at a true value of $810,930.
The Freshwaters contend their property should be valued at $524,307.  The BOR,
however, approved the auditor's value.  The Freshwaters filed an appeal with the
Board of Tax Appeals ("BTA").

{¶ 4} At the BTA hearing, the Freshwaters presented two witnesses.  Their
first witness, appraiser William A. Becker, had prepared two written appraisals.  In

his appraisal, dated as of April 5, 1996, Becker determined the true value of the property to be $585,000. In another appraisal, dated as of December 30, 1991, Becker determined the true value of the property to be $492,000. For the January 1, 1994 lien date, Becker estimated a true value of $550,000 for the real property. Becker determined the January 1, 1994 value by taking the difference between his appraisal values as of December 30, 1991 and April 5, 1996, and adding one half of the difference to the December 30, 1991 value and rounding off the result to a value of $550,000.

{¶ 5} The Freshwaters' second witness was Brian A. Danaher, an attorney and licensed civil engineer. Danaher testified concerning an "owner's determination of fair market value," which he had apparently prepared for the BOR hearing. Danaher's estimate of true value, which he prepared using the income approach, was $519,250 for 1994.

{¶ 6} The county auditor and BOR's only witness was appraiser Thomas A. Schirack, who, like Becker, considered the income approach to be the only approach worthy of serious consideration for this property. Schirack's estimate of true value as of January 1, 1994, was $821,900.

{¶ 7} The BTA accepted Schirack's appraisal, after deducting an amount that Schirack had added for excess land. The true value of the property as determined by the BTA was $782,700.

{¶ 8} This cause is now before this court upon an appeal as of right.

———————————

*J. Drew McFarland* and *Larry G. McQuain*, for appellants.

*Frank Pierce*, Belmont County Prosecuting Attorney, and *Robert W. Quirk,* Assistant Prosecuting Attorney, for appellees Belmont County Auditor and Board of Revision.

*Patricia S. Eshman*, urging reversal for *amicus curiae*, Ohio Home Builders Association.

_____

*Per Curiam.*

{¶ 9} Appellants first argue that the BTA should not have determined the true value of the property to be $782,700 when it previously was valued at $463,000 in 1987, noting that the gross annual income from the property had increased by only about $7,500 during the period from 1987 to 1994. We disagree.

{¶ 10} The appellants would have the BTA determine true value only by taking the prior year's value and then making adjustments to that value based on changes in the income. Appellants' argument, although not stated as such, is that the prior year's valuation should be deemed to be correct, and changes in the prior year's valuation should be made only in response to changes which have occurred since the date of the last valuation. The appellants do not cite any statutory authority or decisions of this court to support their argument.

{¶ 11} We see a number of problems with appellants' proposal. First, the valuation for the prior year, which appellants would deem to be correct and which would serve as the base from which the change would be measured, may not be correct. Second, a hearing on valuation would change from a determination of true value at a given point in time to a determination of the amount of change since the last assessment.

{¶ 12} Finally, and most important, the burden of proof before the BOR in a case like this would shift from the property owner to the county auditor. This shift would occur when the value determined by the auditor was different from the value of the prior year's assessment. Thus, when a taxpayer files a complaint, it would be the auditor, not the taxpayer, who would have to defend the change, because the prior assessment would be deemed to be correct. However, the procedure before a board of revision operates differently—the burden of proof before a board of revision is not on the auditor, it is on the party seeking to change

or affirm the auditor's assessment. *B.F. Keith Columbus Co. v. Franklin Cty. Bd. of Revision* (1947), 148 Ohio St. 253, 269, 35 O.O. 244, 251, 74 N.E.2d 359, 366.

{¶ 13} Although we have not previously answered the exact argument posed, we considered a similar question in *Std. Oil Co. v. Zangerle* (1943), 141 Ohio St. 505, 26 O.O. 82, 49 N.E.2d 406. That question was whether a classification of property as real or personal, made for a prior tax year, was *res judicata* for a subsequent year. In holding that the classification was not *res judicata*, we analyzed the appeal statutes and concluded that the prior decision and classification "remained final and conclusive for the current year only." *Id.* at 516, 26 O.O. at 86, 49 N.E.2d at 411. See, also, *Swetland Co. v. Evatt* (1941), 139 Ohio St. 6, 19, 21 O.O. 511, 516, 37 N.E.2d 601, 607, wherein we stated, "A correction by either the county board of revision or the Board of Tax Appeals merely substitutes for the then current year complained of a valuation which is binding only for the year in question." In *Fiddler v. Bd. of Tax Appeals* (1942), 140 Ohio St. 34, 23 O.O. 232, 42 N.E.2d 151, the taxing authorities claimed that they had been reducing the appraisal for the land in question as values in the area declined. In response to that argument we stated, "The question, however, is not how much of a lowering in tax valuation has been made but, rather, what is the true value in money of the property for the year of the assessment." 140 Ohio St. at 37, 23 O.O. at 233, 42 N.E.2d at 152. See, also, *Zindle v. Summit Cty. Bd. of Revision* (1989), 44 Ohio St.3d 202, 203-204, 542 N.E.2d 650, 651. When the BTA makes a determination of true value for a given year, such determination is to be based on the evidence presented to it in that case, uncontrolled by the value assessed for prior years.

{¶ 14} Appellants also claim that the BTA erred in rejecting the valuation of their appraiser, William Becker. The BTA did so because his appraisals were not made as of the tax lien date. We disagree with appellants.

**{¶ 15}** Becker submitted two written appraisals to the BTA, neither of which pertained to the tax lien date, January 1, 1994. To arrive at a value as of the tax lien date, Becker states that he split the difference between the December 30, 1991 and April 5, 1996 appraisal values, added one half of the difference to his 1991 appraisal value, and rounded off the total.

**{¶ 16}** The BTA rejected Becker's procedure and refused to assign any weight to his opinion of true value. The BTA stated that "[t]he mere fact that the tax lien date is approximately midway between the two appraisal dates does not mean that the 1994 value must also be midway between the two appraisals."

**{¶ 17}** In rejecting Becker's opinion of true value, the BTA cited a passage from The Appraisal of Real Estate (10 Ed.1992) 75, which states that because market forces are constantly changing, "an estimate of value is considered valid only for the exact date specified."

**{¶ 18}** R.C. 5715.19(D) requires that the determination of a complaint filed for a particular tax year "shall relate back to the date when the lien for taxes * * * for the current year attached." R.C. 323.11 provides that the lien for real estate taxes is the first day of January. Likewise, R.C. 5715.01, which authorizes the Tax Commissioner to direct and supervise the assessment for taxation of all real property, provides that "[t]he commissioner shall neither adopt nor enforce any rule that requires true value for any tax year to be any value other than the true value in money on the tax lien date of such tax year * * *." Thus, the first day of January of the tax year in question is the crucial valuation date for tax assessment purposes. *Olmsted Falls Village Assn. v. Cuyahoga Cty. Bd. of Revision* (1996), 75 Ohio St.3d 552, 664 N.E.2d 922.

**{¶ 19}** The essence of an assessment is that it fixes the value based upon facts as they exist at a certain point in time. Becker's approach to valuation was not based upon the facts as they existed as of January 1, 1994, the tax lien date. Becker's appraisals were based upon facts as they existed on December 30, 1991

and April 5, 1996, the dates of his appraisals. Evidence of the valuation as of these two dates is not evidence of the valuation as of January 1, 1994. The real estate market may rise, fall, or stay constant between any two dates, and the assumption that a change in valuation between two given dates is constant and uniform, without proof, may properly be rejected by the finder of fact. The BTA may accept all, part, or none of the testimony presented to it by an expert. *Witt Co. v. Hamilton Cty. Bd. of Revision* (1991), 61 Ohio St.3d 155, 573 N.E.2d 661. In this case, the BTA chose not to accept Becker's valuation, and we agree.

{¶ 20} Appellants also argue that the BTA erred in accepting the testimony of appellees' appraiser concerning commercial lending rates. Appellants claim he did not introduce written confirmation of the rates. Appellees' appraiser testified that he talked with three different bankers, whom he named, concerning their interest rates as of January 1, 1994. In addition, the appellees' appraiser consulted a national mortgage commitment survey to check the figures he obtained from the local lenders. Appellants now claim the BTA erred in accepting the capitalization rate calculated by using these interest rates. We disagree with appellants.

{¶ 21} First, it should be pointed out that the BTA did not rely on the interest rates cited by the appellees' appraiser. The BTA relied on the opinion of value expressed by appellees' appraiser. The interest rates cited by appellees' appraiser were presented only to show the basis for the appraiser's opinion. An expert's opinion of value in a tax valuation case is of little help to the trier of fact if the expert does not explain the basis for the opinion.

{¶ 22} If appellants believed the interest rates used by appellees' appraiser were erroneous, then they should have developed the errors through cross-examination. However, the appellants did not object to the appellees' appraiser's testimony on interest rates, and their cross-examination on the subject merely asked whether the appraiser had any reports from the bankers. The source of the background material that the appraiser uses in arriving at his opinion of value is

one of the factors that the BTA weighs in determining the credibility of an appraiser's opinion of true value.

{¶ 23} Appellants' next argument is that the BTA erred in accepting the higher gross income amount used by appellees' appraiser to the extent that it included a rental amount for a unit that is being used as a lounge. We disagree.

{¶ 24} During his testimony, appellees' appraiser stated that his valuation was based upon fifty-one units, rather than the fifty units used by appellants' appraiser. The difference is due to a one-bedroom unit that has had a wall removed so it can be used a lounge. Residents can reserve the lounge for parties.

{¶ 25} The BTA accepted appellees' appraisal with only a minor deduction for excess-land valuation. When the BTA accepted appellees' appraisal, it accepted the appraiser's assertion that the current lounge area should be counted as a potential revenue-producing unit for purposes of determining gross income. As we stated above, the BTA may accept or reject all, part, or none of an expert's testimony. In this case, the BTA has accepted as a factual matter that in calculating potential gross income, there are potentially fifty-one revenue-producing units. We "will not overrule BTA findings of fact that are based upon sufficient probative evidence." *R.R.Z. Assoc. v. Cuyahoga Cty. Bd. of Revision* (1988), 38 Ohio St.3d 198, 201, 527 N.E.2d 874, 877.

{¶ 26} Next, the appellants argue that the BTA should not have disregarded the testimony of Brian Danaher. The primary basis for the appellants' argument is that because Danaher testified before the BTA in a prior case concerning this property, his testimony should have been accepted as that of an expert in this case. We disagree.

{¶ 27} The BTA found that Danaher was a practicing attorney with experience in the engineering field. Danaher himself admitted, "I don't consider myself an appraiser." The BTA found that Danaher did not qualify as an expert appraiser of real property. The mere fact that Danaher testified before the BTA in

a prior case does not make him an expert real estate appraiser. One of the requirements of an expert witness, as set forth in Evid.R. 702(B), is that "[t]he witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony." In this case, Danaher did not exhibit any "specialized knowledge, skill, experience, training, or education" in appraising real property.

{¶ 28} Finally, the appellants argue that the BTA erred in disregarding Danaher's testimony because it mistakenly believed he had not provided information concerning land value. In light of our ruling concerning Danaher's testimony, the BTA did not err in disregarding his testimony on true value.

{¶ 29} For the reasons set forth above, the decision of the BTA, being supported by probative evidence of record, is reasonable and lawful, and is therefore affirmed.

*Decision affirmed.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

_____