[This opinion has been published in *Ohio Official Reports* at 85 Ohio St.3d 609.]

FAWN LAKE APARTMENTS, APPELLEE, *v.* CUYAHOGA COUNTY BOARD OF

REVISION; OLMSTED FALLS BOARD OF EDUCATION, APPELLANT.

[Cite as *Fawn Lake Apts. v. Cuyahoga Cty. Bd. of Revision*, 1999-Ohio-323.]

*Taxation—Real property valuation of a two-hundred-eighty-eight-unit apartment*
*complex—Reduction in valuation sought by owner—Board of Tax Appeals'*
*adoption of property owner appraiser's valuation reasonable and lawful,*
*when.*

(No. 98-1516—Submitted March 17, 1999—Decided June 16, 1999.)

APPEAL from the Board of Tax Appeals, No. 96-A-338.

_____

{¶ 1} This appeal concerns a two-hundred-eighty-eight-unit apartment
complex located in Olmsted Falls that consists of two hundred sixty-four garden
apartment units and twenty-four townhouse units. The valuation of this property
for tax year 1991 was before this court in *Fawn Lake Apts. v. Cuyahoga Cty. Bd. of*
*Revision* (1996), 75 Ohio St.3d 601, 665 N.E.2d 194.

{¶ 2} For tax year 1994, the owner filed a real estate valuation complaint
with the Cuyahoga County Board of Revision ("BOR") seeking a reduction in the
assessed true value of $8,640,030. The owner claimed a true value of $7,000,000.
The Olmsted Falls Board of Education ("BOE") filed a counter-complaint claiming
a true value of $9,159,720. The BOR found the value assessed by the auditor to be
correct. Fawn Lake filed an appeal with the BTA.

{¶ 3} The real property consists of two parcels with a total area of 17.4
acres. In addition to the apartments and townhouses, the site contains a tennis court,
a recreation facility with a fitness center, an outdoor swimming pool, and a paved
parking area along with eighty-two carport spaces. The complex was constructed

in two phases during 1971 and 1972. The only material change made to the property between 1991 and 1994 was an enlargement of the recreation facility.

{¶ 4} At the hearing before the BTA, Fawn Lake presented the testimony and appraisal of real estate expert Robert J. Kocinski. His appraisal contained the traditional three approaches to value. Using the cost approach to value, he determined an indicated value of $7,600,000. Under the sales comparison approach to value he determined an indicated value of $7,500,000. Finally, his income approach to value indicated a value of $7,450,000. In his reconciliation of values, Kocinski stated that he felt that the income approach best reflected the motivation of a typical investor. Therefore, he used his income approach as the basis for valuing the real estate at $7,300,000, after deducting $150,000 for personal property.

{¶ 5} To rebut Kocinski's valuation, the BOE presented the testimony and appraisal of Sam D. Canitia, also a real estate valuation expert. His appraisal presented only two approaches to value. Using a sales comparison approach, he determined an indicated value of $10,080,000. Using an income approach to value, he determined an indicated value of $10,133,000. Because of the close correlation between his two values, Canitia gave equal weight to each method and determined a value of $10,100,000. After deducting $86,400 for personal property, he determined the value of the real property to be $10,014,000.

{¶ 6} The BTA reviewed the elements of each appraisal and found that the sales comparison approach of both appraisers was less reliable than their income approach. The BTA then compared the methods and numbers used by both appraisers for their net income approach. The BTA found the most significant differences between the numbers used by the two appraisers were in the percentage attributed to vacancy and credit loss, the amount of miscellaneous income and expenses, and the capitalization rates. After reviewing the basis for each of the

figures used by the appraisers for their income approach, the BTA adopted Kocinski's valuation of $7,300,000 for the property as of January 1, 1994.

{¶ 7} The BTA also rejected the BOE's contention that the BTA could not find a value lower than the 1991 valuation.

{¶ 8} This cause is now before the court upon an appeal as of right.

_____

*Fred Siegel Co., L.P.A*., and *Annrita S. Johnson*, for appellee.

*Kolick & Kondzer, Daniel J. Kolick* and *John P. Desimone*, for appellant.

_____

*Per Curiam*.

{¶ 9} When we reviewed this property for tax year 1991, the same two appraisers presented their estimates of value. For tax year 1991, Kocinski, on behalf of the owner, valued the property at $7,000,000, while Canitia, on behalf of the BOE, valued the property at $9,214,000. For tax year 1991, we affirmed the BTA's determination that the true value of the real property was $8,291,810.

{¶ 10} At the hearing before the BTA for tax year 1994, both appraisers testified that the property values in the area had been increasing for the past several years. The increase in property values since 1991 is reflected by the increased valuations made by both appraisers for 1994.

{¶ 11} However, because the final valuation determined by the BTA for 1994 was lower than that determined for 1991, the BOE has appealed. The BOE's first contention is that by allowing the BTA to determine a new valuation for tax year 1994, the 1991 valuation is being collaterally attacked. We disagree.

{¶ 12} The BOE's contention is similar to that addressed by this court in *Freshwater v. Belmont Cty. Bd. of Revision* (1997), 80 Ohio St.3d 26, 684 N.E.2d 304. In *Freshwater*, as in this case, a true value for a prior year had been determined by the BTA. In subsequent years the net income increased by only $7,500. In an appeal for a subsequent year, the BTA substantially increased the valuation. We

3

affirmed the BTA's determination of the increased true value, stating, "When the BTA makes a determination of true value for a given year, such determination is to be based on the evidence presented to it in that case, uncontrolled by the value assessed for prior years." *Id*. at 29, 684 N.E.2d at 307.

{¶ 13} A hearing to determine value for January 1, 1994, is not a collateral attack upon the 1991 valuation. A collateral attack was described by this court as "an attempt to defeat the operation of a judgment, in a proceeding where some new right derived from or through the judgment is involved." *Kingsborough v. Tousley* (1897), 56 Ohio St. 450, 458, 47 N.E. 541, 542. A hearing to determine value for tax year 1994 is not an attempt to defeat the 1991 valuation.

{¶ 14} The essence of the BOE's second contention is that Fawn Lake should not have been allowed to argue before the BTA that the 1991 valuation was wrong. The BOE further asserts that where there was no evidence of a decrease in value in the intervening three years, it was unreasonable and unlawful for the BTA to decide that its earlier decision was wrong. We reject the BOE's contention because it is based upon an erroneous assumption of the purpose of the hearing before the BTA.

{¶ 15} The BOE has assumed that the purpose of the hearing before the BTA for tax year 1994 was to prove that the 1991 valuation was wrong. But R.C. 5717.03 states that for appeals from a county board of revision, "the board of tax appeals shall determine the taxable value of the property whose valuation or assessment by the county board of revision is complained of." The purpose of the hearing before the BTA is to determine the taxable value of the real property as of a given tax lien date. A determination of taxable value as of a given tax lien date does not involve the valuation at a prior tax lien date.

{¶ 16} Contrary to what the BOE appears to assert, past values determined by the BTA are not presumed to be absolutely correct and are not to serve as the basis for all future valuations. If this were true, then, as we pointed out in

*Freshwater*, the hearing before the BTA "would change from a determination of true value * * * to a determination of the amount of change since the last assessment." *Id*. at 28, 684 N.E.2d at 306.

{¶ 17} Finally, the BOE contends that the BTA failed to base its determination of value on probative and credible evidence. We disagree.

{¶ 18} The BOE bases its contention on the fact that the BTA accepted the vacancy and credit loss rate, deduction for reserves, and capitalization rate used by Kocinski in his appraisal. The BOE would instead have the BTA accept the vacancy and credit loss rate, deduction for reserves, and capitalization rate testified to by its appraiser.

{¶ 19} In *Hawthorn Mellody, Inc. v. Lindley* (1981), 65 Ohio St.2d 47, 19 O.O.3d 234, 417 N.E.2d 1257, syllabus, we held that this court would not overrule findings of fact of the BTA that were based upon sufficient probative evidence. Here the BTA was presented with testimony and appraisals from an appraiser representing each party. The BTA thoroughly discussed each of the factors now complained of by the BOE. The BTA reviewed the vacancy and credit loss rates and found Canitia's rate to be too low. The BTA reviewed Kocinski's vacancy and credit loss rate and stated that he "supported his rate in the context of the subject's actual experience as well as that experienced by market competition." The BTA then went on to describe the elements that went into Kocinski's vacancy and credit loss. The vacancy and credit loss rate accepted by the BTA was supported by the evidence.

{¶ 20} The BTA also accepted Kocinski's deduction for reserves, after he had made a downward adjustment for maintenance expenses. Kocinski itemized the elements that went into his replacement reserves and compared his value for reserves of about $195 per unit to that of $200 per unit used by the Federal National Mortgage Association and the Federal Home Loan Mortgage Corporation. Thus, Kocinski's deduction for reserves was supported by the evidence.

**{¶ 21}** Finally, the BOE objects to the BTA's acceptance of Kocinski's capitalization rate. The BTA accepted Kocinski's rate, stating that he "considered factors present in the financing market on tax lien date, the real estate sales market on tax lien date, and published reports to determine a capitalization rate." Kocinski's testimony and report showed that to derive his capitalization rate he talked to banks and the Federal National Mortgage Association. He also derived capitalization rates from sales where he knew the sale price and net income. In addition, he referred to published reports. Kocinski's capitalization rate was supported by the evidence.

**{¶ 22}** When considering the testimony and appraisal reports of these appraisers, the BTA possesses wide discretion in evaluating the weight of the evidence and the credibility of the witnesses that come before it. *Cardinal Fed. S. & L. Assn. v. Cuyahoga Cty. Bd. of Revision* (1975), 44 Ohio St.2d 13, 73 O.O.2d 83, 336 N.E.2d 433, paragraph three of the syllabus. A review and determination of the factors put forth by the two appraisers is exactly the kind of factual matter that it is to be decided by the BTA. *Wolf v. Cuyahoga Cty. Bd. of Revision* (1984), 11 Ohio St.3d 205, 11 OBR 523, 465 N.E.2d 50. The BTA may accept all, part, or none of an appraiser's opinion. *Witt Co. v. Hamilton Cty. Bd. of Revision* (1991), 61 Ohio St.3d 155, 573 N.E.2d 661. Absent a showing of abuse of discretion, the BTA's determination as to the credibility of witnesses and the weight to be given their testimony will not be reversed by this court. *Cardinal Fed. S. & L.* at paragraphs three and four of the syllabus.

**{¶ 23}** There has been no showing that the BTA abused its discretion in finding Kocinski's testimony and report credible.

**{¶ 24}** For all the foregoing reasons, we find the BTA's decision to be reasonable and lawful, and we therefore affirm it.

*Decision affirmed.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

_____